```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE EASTERN DISTRICT OF TEXAS

 3                        MARSHALL DIVISION

 4   SENTIUS INTERNATIONAL, LLC. )(

 5                               )(  CIVIL DOCKET NO.

 6                               )(  2:16-CV-0773-JRG-RSP

 7   vs.                         )(  MARSHALL, TEXAS

 8                               )(

 9   BLACKBERRY CORPORATION      )(

10                               )(  AUGUST 18, 2017

11

12

13                        MARKMAN HEARING

14              BEFORE THE HONORABLE ROY S. PAYNE

15               UNITED STATES MAGISTRATE JUDGE

16

17   APPEARANCES:

18   FOR THE PLAINTIFF:  (See sign-in sheets docketed in
                          minutes of this hearing.)
19

20   FOR THE DEFENDANT:  (See sign-in sheets docketed in
                          minutes of this hearing.)
21

22

23   COURT REPORTER:  Ms. Tammy L. Goolsby, CSR

24   Proceedings taken by Machine Stenotype; transcript was produced
     by a Computer
25
```

1               I N D E X

2

3    AUGUST 18, 2017:

4                                                    PAGE

5    Appearances                                       1

6    Hearing                                           3

7    Court Reporter's Certificate                     59

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              P R O C E E D I N G S

 2         COURT SECURITY OFFICER:  All rise.

 3         THE COURT:  Good morning.  Please be seated.

 4         For the record, we're here for the claim construction

 5  hearing in Sentius International versus BlackBerry, which is

 6  Case No. 2:16-773 on our docket.

 7         Would counsel state their appearances for the record?

 8         MR. DAVIS:  Good morning, Your Honor.  Stafford Davis

 9  on behalf of Plaintiff, and with me is Sandeep Seth and Robert

10  Yorio.

11         THE COURT:  All right.  Thank you, Mr. Davis.

12         MR. YORIO:  Good morning.

13         THE COURT:  Good morning.

14         MR. PARKS:  Good morning, Your Honor.  Michael Parks

15  on behalf of Defendants, with my colleagues Tony Blum and

16  Sartouk Moussavi.

17         THE COURT:  All right.  Thank you, Mr. Parks.

18         I will also state for the record that earlier this

19  morning we distributed to counsel for both sides a set of

20  preliminary constructions.

21         The purpose of those preliminary constructions is not

22  to dissuade either side from taking whatever position they feel

23  is appropriate on these disputed terms.  Rather, the purpose is

24  to let the parties know where the Court is after the initial

25  review of the briefs and the record and to allow you to focus
```

1  your arguments and your time where you think the Court may have

2  most missed the mark.

3          I do reserve the right to alter these preliminary

4  constructions, and not uncommonly do change them based on the

5  arguments received at this hearing, so I hope that you'll take

6  them in that spirit.

7          I'll also say that on several of the means plus

8  function terms, you'll notice that there is no structure

9  provided in the preliminary construction.  That is a reflection

10  of the conclusion that the structure that was offered by the

11  Plaintiff in its proposed constructions is not adequate.

12          I -- I -- the ones that we have left blank are ones

13  where I believe that the structure proposed by the Plaintiff

14  was largely a computer performing the function, and I believe

15  that the current jurisprudence on 112(6) requires that software

16  limitations in the 112(6) context must have some algorithm.

17          And so what I am calling upon the Plaintiff to do is

18  to identify for me an algorithm that is clearly linked in the

19  specification to the function, and I am not doubting that you

20  can do that, but I have not seen that yet, and that's what

21  I'm --

22          The briefing is painted with a broad brush, and what

23  I want from the Plaintiff now is something that I think is

24  adequate for a claim construction, so that's -- that's why that

25  is left the way it is.

1       But any in any event, I would like to hear the

2   arguments on a term-by-term basis.  I'm happy to have counsel

3   group them if you think that's efficient.  I'm happy to take

4   them in whatever order the parties think is best, and you can

5   start with the first one or you can start with what you think

6   is the most important ones.  I'll leave that up to you.

7       But having said that, I'll turn it over first to

8   counsel for Plaintiff.

9       MR. SETH:  Thank you, Your Honor.

10      We have looked at the preliminary constructions, and

11  it is my intention to I think focus the Court on the areas just

12  described.

13      But before we get there, I would like to -- if we can

14  go to slide two -- reflect that the patent itself builds the

15  algorithm of the invention into the claim, and it's a system

16  claim, but as the Court is well aware now, it's a 13-element

17  claim.

18      And what -- why that claim is so long and has so many

19  elements is because the algorithm is built -- baked right into

20  the claim.  An algorithm is a step-by-step process, and that's

21  for Enfish, and what we do is we give the steps that are

22  necessary to practice of this invention.

23      And backing up just one step, this is a software

24  patent.  This is a software patent that takes a visual editor

25  program, such as Word or any other visual editor that uses

1  graphical interface, and it takes the existing functionality of

2  that program, and then it adds a functionality, so kind of

3  like, you know, adding a blind spot detector to a car, we are

4  adding a functionality.

5           The functionality that we're adding to the existing

6  functionality of the visual editor is the functionality of how

7  we're going to take words that are in the document, and we're

8  going to link those to the external reference material we want.

9           In the example given in the patent, external

10  reference material was Japanese translations -- or English

11  translations, I should say, for Japanese words.  So the way

12  we're doing that is through the use of the look-up table, which

13  is a structure that is outside of the tech stream.

14           And we're going to take that look-up table, and we're

15  going to take the pre-existing functionality of the visual

16  editor, which already parses the document, identifies the words

17  that are in the document, determines their position in the

18  document relative to the beginning of the document.

19           And then for words of interest, we're going to take

20  those starting and ending positions, record them in the look-up

21  table, and we're going to also record for that entry in the

22  look-up table a pointer to whatever external reference material

23  we want.

24           The patent leaves open how you want to apply it, so

25  you might want to apply the external reference material to an

1    English translation, or you may want to apply the external

2    reference material that you're going to be retrieving to

3    suggested spelling corrections.

4              THE COURT:  Mr. Seth, let me -- I hesitate to

5    interrupt you, but I -- I'm having -- I'm distracted by a

6    question, so I'm going to ask it.

7              MR. SETH:  Okay.

8              THE COURT:  And that is, what you're describing to me

9    sounds like a method claim, and this is a system claim, and

10   you've got all these means laid out in here, and your argument

11   is that you can claim anything that does this function by the

12   way you've done it without revealing any more structure than

13   the function itself.

14             MR. SETH:  I don't believe that's the argument that

15   I'm making.  I believe --

16             THE COURT:  Well, what is the structure then?

17             MR. SETH:  Well, so the claim lays out for each of

18   the algorithmic steps basically a software module that is

19   programmed to do that step, and the question is whether or not

20   we have specification support for that step.

21             THE COURT:  All right.  So you're saying that there

22   is an algorithm for each step?

23             MR. SETH:  There is an algorithm for each -- no, I'm

24   saying -- I am saying that each step is described in the

25   specification, and the -- the specificity of the algorithm, for

1   example, depends upon to some degree on the level of skill in

2   the art for Enfish.

3          So if they're known techniques, for example,

4   identifying the -- the location of each words in the document,

5   that's a known technique.  So the step-by-step on how that

6   you're going to do a known technique is not something that's

7   going to be specified necessarily in the spec, but --

8          THE COURT:  The passage from Enfish that you have

9   relied upon --

10          MR. SETH:  Yes.

11          THE COURT:  -- starts off with what you're relying

12   upon, but finishes in the same sentence, but there must be some

13   structure, and that's for each 112(6) limitation, right?  I

14   mean, it's -- I don't understand that to say that the

15   limitation can satisfy 112(6) without any disclosed structure

16   just because a person of ordinary skill would know how to do

17   it.

18          I mean, are you arguing to the contrary, that it is

19   sufficient under 112(6) for a limitation just to be known to

20   one of skill?

21          MR. SETH:  I believe that there should be

22   specification support, but the extent of the specification

23   support does not include details that would be known to one of

24   ordinary skill in the art.

25          THE COURT:  When you say specification support, is it

1   all right if I understand structure?  Is that disclosed

2   structure?  Is that what you're referring to when you say

3   specification support?

4           MR. SETH:  Yes.

5           THE COURT:  Okay.  Then I don't know that we have a

6   disagreement.  I just -- what I have seen in your proposed

7   structure for these various limitations doesn't show what the

8   specification reveals.  It just says a computer programmed to

9   perform the function.

10          MR. SETH:  Maybe the better approach, Your Honor, is

11  to jump into some specificity.

12          THE COURT:  Okay.

13          MR. SETH:  Okay.  Since Mr. Yorio will be covering a

14  couple of the elements of the means for determining the

15  beginning position address and the means for determining the

16  starting point and ending point address, I will be addressing

17  the means for converting and the means for selecting.

18          But I think it might make some logical sense if we

19  first start with the determining the beginning of the address

20  and starting point address.  That's 12 and 14 in the outline --

21          THE COURT:  All right.

22          MR. SETH:  -- of the proposed.

23          THE COURT:  That's fine.

24          MR. SETH:  And then I'll come back to the terms 16

25  and 17.

1           MR. YORIO:  Good morning, Your Honor.

2           THE COURT:  Good morning, Mr. Yorio.

3           MR. YORIO:  I'd like to start with term 12 in the

4   preliminary constructions, which is the first term where Your

5   Honor has no identified structure there, and I understood Your

6   Honor's comments at the beginning, and I see the way Your Honor

7   has addressed the other elements.

8           And so for this term 12 and in keeping in sync with

9   the way Your Honor has approached structure, I would say the

10  structure for term 12 is a combination of the visual editor and

11  the grammar parser together with the electronic viewing module.

12          And let me take Your Honor to some of the specific

13  portions of the specification that deal with that.  Slide 25.

14          THE COURT:  And I know that the parties have used the

15  '731 specification for purposes of the cites, so I'm going to

16  be doing that, too, just so we're all on the same page.

17          MR. SETH:  Both parties approached their briefing in

18  the same way, Your Honor, so --

19          THE COURT:  All right.

20          MR. YORIO:  This is an excerpt from the '731 patent,

21  and what is up on the screen now is figure one on the left and

22  an excerpt from column five and column eight.

23          And of note to this particular term is the portion of

24  the specification beginning on column five, line eight,

25  beginning with a text file, and that sentence describes the

 1   type of text or audio/visual information which can be included

 2   in the database.

 3          And it includes sound, images, video which can be

 4   edited during the construction of a linked text database by a

 5   visual editor, which is essentially what the invention starts

 6   with, and that's where the wordified database 20 is

 7   constructed.

 8          And this portion of the specification goes on to

 9   recite -- and this is the highlighted part -- that the database

10   uses a grammar parser and a link engine to build an index.

11   That index provides a location for each reference in the

12   database.  The database is where the text is located.

13          So when you're looking to determine the beginning

14   position and address of the textual source material, you're

15   going to look for the index that provides a location for each

16   reference.  And it goes on to say that all the text references,

17   audio references, graphic references are included, so that is

18   how you get to the text that you want to locate.

19          And then slide 26.  This is a section, Your Honor,

20   further in the specification that's under the compilation

21   stage.  There's a couple of headings which Your Honor would

22   have noted.  This is in the compilation section, and it talks

23   about after the image of the text is created, the cuts are

24   indexed based upon the position offset from the beginning of

25   the text.

1          That's where you find the beginning position address

2   of the textual source information that this term is looking

3   for, and -- and on the left -- and so we cited the -- from

4   column seven the references there, and then it goes on to talk

5   about the start and ends points.

6          THE COURT:  All right.

7          MR. YORIO:  So when an image is created, the cuts are

8   indexed based upon position offset from the beginning of the

9   text, and the system thereby recognizes the first position of

10  the text in the text file with the visual editor, that's the

11  structure, and bases the other position addresses relative to

12  the first position.

13         Dr. Madisetti addressed that in his declaration, Your

14  Honor, and the point that I just made you can find at

15  paragraphs 51 to 57 of the Madisetti declaration.

16         An additional reference that I want to call Your

17  Honor's attention to that is not quite on the screen, and this

18  is again in column seven of the '731 patent, and going down to

19  line 40, the user interacts with the electronic book using a

20  pointing device.

21         When the user clicks within the text image, the

22  location of the pointer is determined.  Location is converted

23  into a position offset from the beginning of the text, which is

24  what is compiled earlier in the process.

25         And I think that those references to the spec plus

1  figure one provide adequate corresponding structure under

2  112(6) for this term 12.

3           THE COURT:  What was the extent of the citation that

4  starts at column seven, line 40?

5           MR. YORIO:  Column seven, line 40 through 44.  Your

6  Honor, 40 to 44.

7           THE COURT:  All right.

8           MR. YORIO:  Unless Your Honor has any other questions

9  on this term, I believe we've presented the Plaintiff's

10 position about the structure that's called out in the figures

11 and specifications.

12          THE COURT:  All right.  I'll let the Defendants

13 respond to that.  Thank you, Mr. Yorio.

14          MR. YORIO:  Thank you, Your Honor.

15          THE COURT:  Mr. Blum?

16          MR. BLUM:  Good morning, Your Honor.  This is for the

17 record Anthony Blum on behalf of Defendants.

18          So we're on the means for determining the beginning

19 position address of textual source material stored in an

20 electronic database.

21          We think a major problem with Plaintiff's proposal

22 that they've construed this to be a processor programmed to

23 perform the step of assigning a character position for the

24 first character of a given set of text within an open text

25 file.

1          But if you look at the actual claim language, it's

2     means for determining a beginning position address.  This means

3     there's already a beginning position address, and you now have

4     to determine it.

5          Plaintiff, however, has changed the meaning of the

6     claim such that you're assigning a character position.  You're

7     not actually determining what the address is.

8          Sentius hasn't disclosed any structure or any

9     algorithms within the specification for how the beginning

10    position address is actually determined.  It hasn't disclosed

11    the algorithm for doing that.

12         I believe opposing counsel put up a similar excerpt

13    from the '731 patent a few minutes ago.  Here we have a key

14    feature of the system format.  It's a method by which the

15    original book text is indexed and linked with the external

16    reference.

17         During the compile process, an image of the text is

18    created.  When the image is created, the cuts are indexed based

19    upon the position offset from the beginning of the text.  But

20    here it's telling you that the cuts are indexed based off the

21    beginning of the text.

22         But it doesn't tell you how the address of the

23    beginning of the text is actually determining.  It doesn't

24    provide an algorithm for figuring out what the beginning

25    position address actually is, and that's required under the

1  Federal Circuit case law.

2       While Sentius focused on the descriptions in the

3  specification that was just shown in the previous slide, in the

4  reply brief it really seems to change its theory, and the reply

5  brief then points to the visual editor and the grammar parser.

6       And it explains techniques for determining the

7  beginning point position of the text as well as determining the

8  starting and ending point position of the individual words

9  relative to the beginning point position were well-known in the

10  art and being performed by known visual editors of the day with

11  grammar parsers.  But the problem is the visual editor is not

12  an algorithm.  It's not a step-by-step procedure for performing

13  a result.

14       The other problem is the visual editor is not

15  actually linked to this function of determining the beginning

16  position address, and under the Federal Circuit's case law in,

17  for example, Default Proof and a number of other cases, a

18  structured disclosed in the specification is corresponding

19  structure only if the specification or prosecution history

20  clearly links or associates that structure to the function

21  recited in the claim.

22       But in the '731 patent, in the '633 patent, the

23  visual editor and the grammar parser are never clearly linked

24  to this function of determining a beginning position address.

25       Can you move to slide 20?  If you do a -- if you

1  search the specification for the word visual editor, it's only

2  going to appear three times in the entire patent, including the

3  claims.  It's twice in the specification and once in figure

4  one.

5        The first instance in the specification where visual

6  editor is described shown on slide 20, the '731 patent, column

7  five, lines seven through 15, an electronic book and/or

8  multimedia source material is provided as a teaching resource.

9        And it goes on to say a text file ten, which may

10  include sound images and/or videos, is edited during

11  construction of a linked text database by a visual editor that

12  is used to build a wordified database, and then it goes on to

13  say the database source is a grammar parser and a link engine.

14        So here it's only linking visual editor to two

15  different aspects.  One is the visual editor can edit the text

16  file and then, two, the visual editor can build a wordified

17  database.  It never describes the visual editor as determining

18  the beginning position address, though.

19        The second instance of visual editor appearing in the

20  specification is at '731 patent, column seven, lines one

21  through six.  Here you can see the specification states the

22  word cutting process is accomplished using a simple visual

23  editor, for example, a point and click system using a pointing

24  device, such as a mouse.

25        Well, here, again, this is talking about the means

 1   for cutting limitation that we'll get into later today.  It's

 2   not talking about the means for determining a beginning

 3   position address.

 4          Go back to slide 37.  And because the visual editor

 5   is not actually linked to this means for determining beginning

 6   position address, it is insufficient.

 7          Plaintiff's counsel a minute ago also said that the

 8   electronic viewer module is part of this structure, but the

 9   specification never actually discloses that the electronic

10   viewer module has any connection to the means for determining a

11   beginning position address.

12          Can we go to slide seven?  So you can see here in

13   slide seven, figure one is an overall schematic diagram of the

14   invention.  It has a number of black boxes starting at the top

15   with a text file, and you can see the visual editor on

16   wordified database.

17          The specification describes the first eight means

18   plus function limitations claim 95 of the '731 patent, but the

19   numbering will be a little bit different on the '633 patent,

20   but the first eight limitations are all linked to the top half

21   of figure one.

22          The -- so then the latter limitations, I think it's

23   the last five in the '731 patent, starting with means for

24   displaying and ending with the second means for displaying,

25   those are all performed by the bottom half of figure one where

1    you have the electronic viewer module.  And Sentius, they

2    actually agree with this throughout the technology, throughout

3    its technology tutorial.

4            I don't think I have the correct slide for this

5    limitation, but throughout the technology tutorial it goes --

6    Sentius goes element-by-element and then highlights the boxes

7    in figure one, which it thinks is responsible for that

8    function.

9            And when you get to the means for determining a

10   beginning position address, it will have boxes on the top half

11   of figure one highlighted, not the electronic viewer module,

12   and that's because the electronic viewer module has no

13   connection.  It's not clearly linked or clearly associated with

14   this step of means for determining beginning address.

15           Slide 37.  I would actually reference the Court to

16   Sentius' technology tutorial.  It's page 21 of that tutorial,

17   where for the means for determining a beginning position

18   address Sentius identifies the text file and individual editor.

19   It does not identify the electronic viewer module.

20           But the visual editor, as discussed, is also

21   insufficient to be the structure.  It's not a step-by-step

22   procedure.  It's not an algorithm.  But even assuming arguendo

23   for the moment that it was an algorithm, it's insufficient

24   under the Alfred E. Man decision cited in the briefs.

25           In the Alfred E. Mann case, there is a MPF

 1  limitation, which was a means for generating data indicative of

 2  the audio signal, and there the patent owner argued the term

 3  wasn't indefinite because there was a microprocessor which

 4  implemented a log rhythmic conversion algorithm to generate

 5  data indicative of an audio signal.

 6          The Federal Circuit, however, rejected that for

 7  several reasons, and one of those reasons was that a log

 8  rhythmic conversion could be implemented through multiple

 9  algorithms and no specific algorithm was disclosed in the

10  specification.

11          Here we have the exact same issue.  I mean, there are

12  many different visual editors.  Sentius itself throughout its

13  exhibits admits that.  They cite to it in the EMACS visual

14  editor, the VIM visual editor, and we all know about Microsoft

15  Word, Go Pad, and a whole host of other visual editors.

16          But the '731 patent, the '633 patent, they never

17  disclose any specific visual editor or any set of visual

18  editors as would be required under Alfred E. Mann.  Another

19  problem with Sentius' theories is that in its declaration and

20  throughout its briefs, it's basically making the argument that

21  the visual editor performs all these functions.

22          It's saying -- its expert Dr. Madisetti says you

23  would take an off-the-shelf visual editor, and then you would

24  modify the -- I guess the code of the visual editor with

25  well-known algorithms to achieve the invention of the '731

1  patent.

2          That's inconsistent with what the '731 patent

3  actually discloses.  The '731 patent doesn't disclose the

4  visual editor doing everything.  The visual editor is only one

5  module of many other modules and other elements, as you can see

6  in figure one.

7          The visual editor builds a wordified database.  The

8  wordified database sources a grammar parser and link engine and

9  the steps go on.  There's no evidence in the record.

10  Dr. Madisetti didn't testify that somehow you can just take

11  EMACS or another visual editor such as VIM and, you know, use

12  that in the invention to create a wordified database.

13          THE COURT:  I mean, with respect to the Alfred E.

14  Mann case, if the specification disclosed several algorithms,

15  in this case several visual editors, I don't think it would be

16  problematic that there are several disclosed.

17          I think the problem that the Court focused on in

18  Alfred E. Mann is that it could be any -- the -- the

19  specification there just referred to a general set of them as

20  opposed to specific examples.

21          MR. BLUM:  I 100 percent agree with you, Your Honor.

22  I think there, though, the Court explicitly said that no single

23  algorithm or set of algorithms was disclosed, so certainly you

24  could disclose multiple algorithms.

25          But I think here we have the exact same thing where

1    there's no algorithm disclosed.  It could be a processor

2    programmed to perform the function in any manner whatsoever.

3                THE COURT:  Well, my -- the comment, I guess, was

4    referring back to if there are several visual editors

5    disclosed, I don't think that that is a flaw as long as they

6    are disclosed.

7                MR. BLUM:  So if several visual editors were

8    disclosed in the specification and a visual editor was actually

9    capable of performing these function, that might not be a

10   problem.

11               Here we don't have several visual editors disclosed

12   in the specification.  It's only the black box that says visual

13   editor.  It's only in the briefings and their declarations have

14   they identified specific visual editors.

15               THE COURT:  Okay.  Well, I agree it needs to be in

16   the specification, but all right.

17               MR. BLUM:  Thank you, Your Honor.  That's all I have

18   for this term.

19               MR. YORIO:  Rebuttal to that point, Your Honor?

20               THE COURT:  Yes, definitely.

21               MR. YORIO:  The visual editor that is disclosed at

22   various points in the specification and the figures is

23   discussed by Dr. Madisetti in his declaration, and the

24   specification in our case goes to the various steps about how

25   the visual editor was used.

1        And you see that under the word cuts and the

2   compilation stages, and it goes through step-by-step how the

3   system works when a user uses a pointer or a mouse to select

4   certain references.

5        THE COURT:  So point me now to the part of the

6   specification that you would say links the visual editor to the

7   function that we're dealing with here, the means for

8   determining a beginning position.

9        MR. YORIO:  It's -- this particular slide that's up

10  right now, Your Honor, in column seven, during the compile

11  process created an image of the text, and then the next step is

12  to locate the beginning of the text, and the next sentence

13  talks about Your Honor's inquiry.

14       When the image is created during compilation, cuts

15  are indexed based upon the position offset, which the

16  specification tells you how to locate from the beginning of the

17  text.

18       Dr. Madisetti says that one skilled in the art would

19  know that that reference, in order to input the text file into

20  the visual editor, the system would open the file and identify

21  the starting location or beginning position address of the text

22  file.

23       THE COURT:  Well, I guess what I'm asking is, is

24  there anything that links the visual editor to this?

25       MR. YORIO:  That is in column five, I think, slide

1  33.  This takes through -- word cuts is the stage before

2  compilation, and this sets up the file for the compilation

3  portion, and you see here the references to column seven and

4  column five.

5          Let's just look at another one.  So in the second

6  paragraph here, beginning with figure one, that's the column

7  five reference.  It talks about the text file, what's shaded

8  there from line -- line eight -- line eight to 19.  It goes

9  through the process about how the text file is developed, what

10 it consists of, and then how the visual editor is used to build

11 the wordified database using those text files.

12         THE COURT:  Does that refer anywhere to determining a

13 beginning position addressed?

14         MR. YORIO:  In line 16, the index provides the index

15 that it tells you how to prepare and build, provides a location

16 for each reference in a database, and includes a relational

17 database tangent and linkable entities with the text

18 references, and then it goes on.

19         And then when you go to column seven in the

20 compilation process, which is on slide 26, so when the image is

21 created, cuts are indexed based upon the position offset from

22 the beginning of the text.  So you look at the word cut and the

23 compilation stages together to determine the beginning position

24 address.

25         So the text file is loaded.  The index tells you its

1    location, and then the cuts are indexed based upon the position

2    offset from the beginning of the text.

3           THE COURT:  I understand it says it's using the

4    beginning position, but where does it talk about determining

5    the beginning position address?

6           MR. YORIO:  As Madisetti indicates in his

7    declaration, and he's referring to both columns five and seven

8    and figure one, the wordified database, which is a list of the

9    words, the process described in those sections, and then a

10   person of ordinary skill in the art would know that in order to

11   input the file into a visual editor, the system must know the

12   starting location of the text file.

13          You'll need to take an additional step.  There's

14   adequate support in the specification together what a known

15   technique in part is known to one of ordinary skill in the art,

16   which is what Enfish specifically permits.

17          That's sufficient to provide the structure in a

18   multi-step algorithm of the type we have here, so four-step

19   algorithm in Enfish and a two-step algorithm in Alfred Mann.

20   There's multiple steps here, but the holding is the same.

21          Where you have some structure that covers the

22   particular element you're talking about, you can in part add to

23   it by known techniques through --

24          THE COURT:  I understand, but the structure still has

25   to be linked in the specification to the function.  And, I

 1   mean, that's part of the trade off in using means plus function

 2   claim, and that's what I'm struggling with here.

 3             I understand that you're able to describe it and your

 4   expert Madisetti is able to well describe it, but I'm trying to

 5   find where the specification sets it out.

 6             MR. YORIO:  It's a combination of the steps that I've

 7   referenced in terms of the index that's created, which has

 8   locations, and then the cuts index based on the offsets.  The

 9   text -- the text, once it's loaded and the location is there,

10   the beginning location is already set.  That goes back to the

11   column five references I mentioned earlier.

12             THE COURT:  Okay.

13             MR. YORIO:  If you're looking at figure one in

14   conjunction with the text and the specification in columns five

15   and seven, lines 29, 39, that you see here, if you look at any

16   one of them in isolation, I understand Your Honor's concern.

17   If you look at them together, figure one plus column five plus

18   this, these -- lines of column seven, you get adequate

19   structure under Enfish and Alfred Mann.

20             THE COURT:  And what does this tell us about the

21   address?

22             MR. YORIO:  Go to the slide 25.  Slide 25 has the

23   column five reference, and the index that is built here using

24   the visual editor and grammar parser and a link engine locates

25   each textual and audio/video reference in the source material.

1          Index provides a location -- that's the key word --

2    for each reference in a database, so you know where that

3    reference is located, and you know where the beginning of the

4    text is.

5          You go -- when the user clicks in the next steps, it

6    goes right to that -- right to that reference.  I think that's

7    adequate support to identify where the location of the

8    beginning position address of the particular text file that

9    you're looking at.

10          THE COURT:  All right.

11          MR. BLUM:  Your Honor, can we have a very quick,

12    short response to that?

13          THE COURT:  Yes, that's fine.

14          MR. BLUM:  Your Honor, we just wanted to reiterate

15    that nothing Mr. Yorio just read from the specification

16    actually links the visual editor to this step, and I think in

17    all those excerpts you don't even find the word visual editor,

18    and instead it's other elements in figure one --

19          THE COURT:  I have not forgotten your argument.

20    Don't worry.

21          MR. BLUM:  Then I'll step down.

22          THE COURT:  Thank you.  Let's go ahead to the next

23    term that Plaintiff wants to present.

24          MR. YORIO:  I think that will be claim term 14.

25          THE COURT:  All right.

1          MR. YORIO:  If you'll pull up slide 27, and this is

2    term 14 in Your Honor's preliminary construction, and this is

3    the means for determining starting point address and ending

4    point address of at least one of the plurality of discrete

5    pieces.

6          Similar to the point that we made with term 12, we

7    would supplement the structure reference that you see there by

8    the visual editor and the grammar parser and link engine

9    together with the electronic viewing module.  The specification

10   references are similar here, Your Honor.  The argument's not

11   identical, but similar.

12          Next slide 28.  Again, when you're turning the --

13   you're looking for the starting point address and ending point

14   addresses, you look in the compilation process.  When the image

15   is created, the cuts are indexed based upon the position

16   offset, and then the start and end points of the cut text are

17   recorded in a look-up table along with links to external

18   references.

19          Go back to slide 25.  Although this is under the

20   previous term, it's the same reference into column five

21   beginning at five through 19, and what you see there is that

22   the visual editor is used to build a wordified database similar

23   to the last term, and the database in turn sources the grammar

24   parser and link engine to build an index.

25          The index again provides a location to reference in

1   the database, not only the beginning portion of the text, but

2   it also allows you to determine the starting and ending point

3   addresses in the compilation step that you see in column five.

4           So this the column five reference plus figure one and

5   the column seven reference on compilation provide sufficient

6   disclosure of how the start and end points of the particular

7   referenced discrete pieces -- excuse me -- are located.

8           THE COURT:  Is there any difference in the structure

9   you're proposing for these two limitations?

10          MR. YORIO:  I think it's the same, Your Honor.

11          THE COURT:  All right.

12          MR. YORIO:  The references in figure one and in the

13  specification columns five and seven are the same.

14          THE COURT:  And the limitation that we've referred to

15  as the number 12 is the one that is identifying the overall

16  block of external -- no, it's the --

17          MR. YORIO:  Textual material.

18          THE COURT:  -- textual material that is being

19  analyzed.

20          MR. YORIO:  So that would be the entire text, and

21  then the beginning position and ending piece of position

22  addresses are for the discrete piece that is selected to be

23  part of the text.

24          THE COURT:  All right.

25          MR. YORIO:  And the specification references and the

```
 1   figure one cover both of those, both identifying where the text
 2   begins and where its location is and where the cuts are for
 3   starting end points that are recorded in the look-up table.
 4        Obviously the look-up table is clearly described in
 5   the specification and is more than adequate corresponding
 6   structure.
 7        THE COURT:  The -- these addresses that we're talking
 8   about in this limitation we're referring to as 14 are
 9   determined from the beginning position address, which is the
10   address we were talking about in 12; right?
11        MR. YORIO:  Right.  So the index -- in column five on
12   this slide, the index provides a location for each reference,
13   so that would be the text that we're talking about.
14        And then when you go to column seven, slide 28, after
15   the image of the text is created, then the cuts are indexed
16   with start and end points that you see referenced there, Your
17   Honor.
18        And the cut -- the beginning and ending point
19   addresses are recorded in the look-up table with the link to
20   the external reference that you've already looked at.
21        So it -- think of it if it's a file that would look
22   something like a patent, you've got the whole patent is already
23   loaded and locating, and you're just highlighting certain parts
24   of the patent, similar to what we've done in the slides, so
25   that would be reasonable analogy.
```

1    THE COURT:  So you're -- the structure you're

2  proposing would be the -- the video editor or -- I'm sorry --

3  the visual editor?

4    MR. YORIO:  Plus the grammar parser and the link

5  engine.  That's how you create the index, and then the cut

6  points start and end points in the text are recorded in the

7  look-up table, so I guess I would add the look-up table to the

8  list, Your Honor.

9    THE COURT:  And the part of the specification that

10  you contend links these structural elements to this function

11  are the passages you cited from columns five and seven?

12    MR. YORIO:  Right, and figures one and two.

13    THE COURT:  All right.

14    MR. YORIO:  Let me look at maybe one other segment,

15  Your Honor.

16    In column six, Your Honor, there's a description on

17  figure two.  I don't have a slide, but it describes the flow

18  diagram in figure two.  And beginning on column six, line 49,

19  it talks about to find a reference to a particular word or

20  selected entry displayed on the screen, the user clocks the

21  text that is viewed with a pointing device, such as a mouse.

22    Click position is determined and used to calculate an

23  offset value within the text 200, and it goes on to describe

24  exactly how a particular click at horizontal and vertical

25  coordinates 175 provide you with an offset value, and that's 6,

 1   46 through 65, Your Honor, column six, lines 46 through 65.

 2          THE COURT:  All right.

 3          MR. BLUM:  Your Honor, for the means for determining

 4   a starting point address, again, Sentius is essentially

 5   invoking the Katz exception where the construction is

 6   essentially a processor program to perform this -- to perform

 7   the function at any manner whatsoever.

 8          The Katz exception doesn't apply, though.  As you

 9   know, the Katz exception only applies in rare circumstances for

10   things such as storing.  You can actually see this based upon

11   the agreed constructions for beginning point address and ending

12   point address.  There, the parties agreed that the terms are

13   simply the offset value from the beginning position address to

14   the starting point.

15          So essentially Sentius has done in its construction

16   is to say a processor programmed to perform the function, and

17   then they stick in the concept of this offset value or the

18   starting and ending character positions offset from the first

19   character position.

20          In addition, Sentius hasn't identified any structure

21   or any algorithm or step-by-step procedure for performing the

22   function in the specification of the patents.  Sentius points

23   to the following excerpts from the '731 patent, the database 20

24   sources a grammar parser and a link engine that builds an

25   index, which, in turn, locates each textual and audio/video

 1   reference in the source material.

 2            But, again, this isn't -- this doesn't really have

 3   any connection to how the starting point, ending point are

 4   determined based upon beginning position address.

 5            Sentius also cited to the second excerpt where it's

 6   when the image is created, the cuts are indexed based upon the

 7   position offset from the beginning of the text.  The start and

 8   end points of the cut texts are recorded in a look-up table

 9   along with the links to the external references.

10            But the problem here is this doesn't tell you how the

11   starting and ending points are determined.  It doesn't tell you

12   the algorithm for calculating that offset value.

13            In the reply brief and here today Sentius seems to be

14   focusing on the visual editor, and in the reply brief, Sentius

15   stated notably, Defendants do not dispute that a visual editor

16   is disclosed as performing the claimed functions.

17            Well, in the opening brief, visual editor didn't even

18   appear to be their argument.  Visual editor doesn't appear in

19   the opening brief with respect to this claim limitation.

20            But really for reasons that are very similar to what

21   we just discussed with means for determining a beginning

22   position address, a visual editor is insufficient.  It's not a

23   step-by-step procedure, and no specific visual editor or set of

24   visual editors was disclosed in the specification.

25            Sentius also mentioned the look-up table today, but

1   that couldn't be the structure because the look-up table is

2   simply where the addresses, where the offset values are stored.

3   The look-up table doesn't actually perform the process of

4   determining what the addresses or what the offset values are.

5   It doesn't perform the function and, therefore, cannot be the

6   structure.

7            Sentius today has also pointed to the -- I believe

8   it's the -- besides the visual editor, it's also pointed to the

9   grammar parser and link engine, but, again, those are just

10  simply black boxes.  They're not algorithms.

11           They have -- they have -- well, as Your Honor knows,

12  the algorithm actually has to be disclosed in the

13  specification, but while it wouldn't be sufficient that an

14  algorithm is well-known in the part, we actually don't even

15  have any evidence in the record that wordified databases or

16  link engines or grammar parsers are well-known.

17           And then as we discussed earlier with the Default

18  Proof case, there has to be that clear link or clear

19  association, and nowhere in any of the citations that Sentius

20  has discussed today is the visual editor ever linked to the

21  step of means for determining the starting and ending point

22  addresses.

23           Oh, and one last thing.  At the end of Sentius'

24  presentation they referred the Court to paragraph six of the

25  '731 patent.  If you'll flip to slide seven.  So in that

1  excerpt from column six of the '731 patent, it talks about --

2  it's describing the flow of figure two, and it talks about to

3  find a reference to a particular word or other selected entry

4  displayed on the screen, the user clocks -- I think that should

5  be clicks -- the user clicks the text that is viewed with a

6  pointing device such as a mouse.

7          What this is actually talking about is this is

8  describing the electronic viewer module.  This is at the end.

9  This is describing what you would see as shown in figure three

10 where there's Japanese text being displayed.  The user can

11 click on it and then get the external reference materials.

12          But this is happening in the electronic viewer

13 module, which is on the bottom half of figure one, but as

14 Sentius described in its technology tutorial, the bottom half

15 performs the last eight limitations.  It doesn't perform the

16 first five MPF limitations.

17          So there's absolutely no clear link or clear

18 association between the electronic viewer module or what

19 Sentius read from column six to this MPF limitation for means

20 of determining starting and ending point addresses.

21          Accordingly, BlackBerry believes the claim is

22 indefinite because there's no structure set forth.

23          THE COURT:  All right.  Thank you, Mr. Blum.

24          MR. YORIO:  Would you leave that slide up that you

25 have in column six?  Oh, I'm sorry.  Could you -- slide 31.

1  Side 31, although it's for a different term, Your Honor, it

2  does have part of the column six reference.

3           THE COURT:  I've got the patent in front of me.

4           MR. YORIO:  Okay.

5           THE COURT:  So it's not a problem.

6           MR. YORIO:  Okay.  So the -- the point that counsel

7  was making is that there -- because the visual editor is

8  described in the cutting and the compilation part of it, it

9  doesn't have any application in figure two.

10          Well, that's not correct.  The visual editor sets up

11 the process and the flow that you see in figure two after the

12 index has been created and the cutting part of the algorithm.

13          In figure two, it describes the flow diagram.  Your

14 Honor can see the rest of it.  It takes the reader through all

15 the steps to find a particular word, and it talks about how the

16 offset value is located by virtue of clicking a particular

17 horizontal and vertical coordinates.

18          The specification is very clear about how this is

19 determined, and this tells you exactly how the system works to

20 do that.

21          THE COURT:  But the -- the discrete pieces with their

22 starting point and ending point addresses have already been

23 determined before what's described there happens, haven't they?

24          MR. YORIO:  I don't think that they're that isolated,

25 Your Honor.  I think that the -- I understand counsel's

1  argument that they come later in the step, but this talks about

2  how you determine a particular offset value, and that, by

3  definition, is the beginning and ending point addresses of a

4  particular discrete piece.

5          If you look at figures one and two together and the

6  column five, six, and seven references together, you have more

7  than adequate structure in my view to support this particular

8  element.

9          THE COURT:  Isn't the click position that's being

10  referred to in that passage from column six a position that the

11  user moves to?

12          MR. YORIO:  Well, the user uses the pointing device.

13  The system takes over there to locate the coordinates and

14  the off -- calculate the offset value, as you see in figure

15  two.

16          THE COURT:  And by the time any of this is shown on

17  the display for the user, the limitation described here has

18  already occurred, hasn't it?

19          MR. YORIO:  Well, as we said in figure -- slide 26,

20  it talks about the -- the index being constructed during --

21  this is in the cut -- the word cuts part of the patent, so it's

22  earlier in the process.

23          And it talks about the cuts being indexed based on

24  the position offset, figure -- and the start and end points of

25  the cut text are recorded in a look-up table, along with the

1    links to external references, and that is a reference to what

2    you saw in figure two.

3              I don't -- I think there is a -- when you read the

4    specification and you read columns five and six and they talk

5    about a sequential practice of the system, but when you get to

6    column seven, it sort of summarizes a bit of what has been

7    included before, and that's what you see here in the column

8    seven reference.  I would say this part of column seven

9    essentially merges figures and one and two with respect to

10   offset.

11             THE COURT:  Are you saying that the click position on

12   the screen, on the display has something to do with determining

13   the starting point address and ending point address of the

14   discrete pieces?

15             MR. YORIO:  Well, how -- the discrete pieces have to

16   be determined somehow, and it has to start with a click because

17   the system needs to know what are you looking for.  The user

18   starts that process with the mouse.

19             THE COURT:  That's the way the user identifies which

20   of the discrete pieces the user is interested in.

21             MR. YORIO:  Right.

22             THE COURT:  But what does that have to do with

23   assigning starting point and ending point addresses for those

24   discrete pieces?

25             MR. YORIO:  Well, how do you know what the discrete

1    piece is until the user makes a determination.  It has a text

2    file that you locate it.

3              THE COURT:  Doesn't the system already have it

4    indexed before the user ever starts?

5              MR. YORIO:  Well, it's indexed for the whole thing,

6    but what is the user going to locate.  What is the user

7    interested in when he clicks, but all of the pieces in the text

8    file are already located, and you see that in figure one.

9              THE COURT:  And they have addresses already assigned

10   to them, right?

11             MR. YORIO:  That's right.  That's in slide 25, I

12   think.

13             THE COURT:  I'm just confused.  If you're saying that

14   this limitation is related to the user clicking on the screen,

15   I --

16             MR. YORIO:  Well, it's related to it in the sense

17   that if the beginning and ending point and position addresses

18   of the textual source material were located, the user could not

19   select a particular word on which to click.

20             So you go back to column five here, and it talks

21   about the visual editor building an index which locates each

22   reference in the source material, which includes the beginning

23   position and an ending position addresses -- starting and

24   ending position addresses for any of the discrete pieces.  And

25   that's using figure one.

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,  on 08/18/2017                                          39

1          Each reference in the database has its own location.

2    By definition, a location has a starting and an ending point

3    address, and this is from column five, this reference here,

4    column five, five to 19.

5          And because you have that there, when the user clicks

6    on a word, they're able to find the particular offset value

7    that you see in figure two.

8          THE COURT:  All right.

9          MR. YORIO:  Thank you, Your Honor.

10         THE COURT:  Thank you, Mr. Yorio.

11         MR. BLUM:  Your Honor, I think you're interpreting

12   this correctly that when the user is clicking on the Japanese

13   text, these offset values have already been determined.

14   They've already been stored in the offset index as shown in

15   figure one.  They're already been stored in that offset index,

16   and you can see that pretty clearly in figure one.

17         There are no arrows from the electronic viewer to the

18   top half of figure one.  The electronic viewer doesn't interact

19   with the visual editor or the link engine.  Instead, the top

20   half of figure one is the process that creates the file which

21   is on the bottom left of figure one, and then the electronic

22   viewer is simply able to read the information that's already

23   been stored in that file.

24         Thank you.

25         THE COURT:  All right.  Thank you, Mr. Blum.

1          What is the next term that you want to address?

2          MR. SETH:  Your Honor, I think we'll -- excuse me.  I

3   think we'll address 16 and 17.

4          THE COURT:  Very well.

5          MR. SETH:  Or 16.  So following on what Mr. Yorio and

6   the specification is describing, and as the Court pointed out,

7   we have indexed the locations of all of the words in an offset

8   index.

9          And as Your Honor points out, there's going to be --

10  the system is going to receive an input now from the user

11  because the whole point is to allow the user to see selected

12  reference materials for a given -- for a given selected word,

13  to see the reference materials that the system has recorded

14  links to in the look-up table.

15         And so going to the -- actually in -- in claim

16  element 15 in the preliminary construction, that starts the --

17  that relates to the procedure where -- where the user has given

18  that input by basically identifying a word that they want or

19  selecting a word that they want to see the external reference

20  materials for.  And what the system has to now do is take the

21  click location and convert it to an offset value.

22         And can we go to slide 36, please?  I'm sorry.

23  Thirty-seven.  And so we're -- we're actually going to be

24  reviewing some of the same portions of the specification

25  because everything is sort of tied together.

1          So in column seven, which we talked about a little

2     earlier, in 40 through 49, we have the interaction that's

3     taking place through the viewer module, or sometimes referred

4     to as the electronic viewer, that the user is using to interact

5     with the system and clicking on.

6          Now, it's a text image that's been displayed with

7     the -- behind the image are the index offset values of each of

8     the words, and the user is now clicking on one of them, and

9     the -- as we see in figure two in the example given in -- for

10    just as a description, they're clicking on a coordinate of 175,

11    and that's returning an offset of 25.

12         And that is going to -- that's -- that's done so that

13    the system then in claim element 17 can select one of the

14    external reference materials, which it's going to do by going

15    into the look-up table for that offset and then seeing what the

16    recorded link is.

17         And in the process of seeing that recorded link, it

18    selects the -- the link is pointed already to the external

19    reference material that will then be retrieved and then

20    displayed in the pop-up window.

21         THE COURT:  And that part basically says to me that

22    you determine it.  What I'm looking for is the means for doing

23    so.

24         MR. SETH:  Yes, Your Honor.

25         And the means for doing so is the offset index that

1  you have already compiled by virtue of determining the

2  beginning -- so you've determined the beginning and the ending

3  location of every word in the document.

4          And that's what any visual editor has to do because

5  it has to know -- it has to be able to know what to show on the

6  screen, and so it needs a mapping of all of the -- it needs the

7  offset index so that it can display wherever you are scrolled

8  to within the document.

9          So that offset index is referred to in -- or the

10  indexing and creating the offset index is referred to in all of

11  the specification previously cited in the various places, but

12  here what we're focusing on is -- I'm sorry.  Can you go slide

13  38?  Yeah.

14          This is cut off, Your Honor, from column six -- I'm

15  sorry -- column seven, 29 to 39, and what we're doing is when

16  we're compiling -- the -- the cuts -- the cuts, the words are

17  indexed and based upon the position index from the beginning of

18  the text -- we've talked about this.

19          This is the starting end points of each of the words.

20  Some of those words, or it could be all of those words, are

21  going to be recorded in the look-up table.  But all of the --

22  all of the words have been indexed.  They have to be so that

23  the visual editor knows where to put, for example, the cursor

24  location.

25          So if you're in a Word document, for example, and

1   you're pointing to a -- clicking on to a particular place in

2   the screen, the insertion point -- in order for the system to

3   know where the insertion point goes, it has this offset index,

4   this mapping, if you will, of coordinates to the offset

5   position within the document, the location within the document

6   of any given click.

7            And so that's really all you're doing is you're

8   consulting the offset index that's referred to to determine

9   which position -- where -- if you're using the visual editor in

10  a normal way, it would be where to put the insertion point, for

11  example.

12           But it's the same technique that's being used here

13  just to determine where the click is taking place, at which

14  word has the click taken place, so that we can take that --

15  that click position, that location in the document, and then

16  consult the look-up table to see is it one of the words that

17  we've recorded in the look-up table as being linked to some

18  external reference material.

19           So we can't get to the look-up table and see whether

20  the word clicked on is a word that has external reference

21  material without first converting the click location to the

22  position within the document.

23           And that was also extensively discussed in

24  Dr. Madisetti's declaration because this isn't anything new.

25  Any visual editor has to know where to be able to put the

1    insertion point, so they always have to have the mapping or an

2    offset index, if you will, that will convert a click location

3    in the document to a place -- I'm sorry,  click location on the

4    screen to a place in the document.

5              And -- and -- and that feature is described here, a

6    reference here specifically with regard to this claim element

7    of converting display address to an offset value from the

8    beginning position address.

9              And it's referred to most particularly in the second

10   highlighted on slide 38, Your Honor, describing figure two,

11   where it says to find a reference to a particular word or other

12   selected entry displayed on the screen, the user clicks the

13   text that is viewed with a pointing device such as a mouse.

14             The click position is determined and used to

15   calculate the offset value within the text, and then it goes on

16   to describe the example shown in figure two itself, and so that

17   is where the step is being described.

18             And then it -- and then if I might just finish with

19   element 17, once the -- the -- once the click position was --

20   was determined and then to convert it to figure out where in

21   the document it is by consulting the offset index, then you

22   will -- you will go to the look-up table.

23             And that's in the comparison -- I'm sorry -- means

24   for comparing, that's element ten, and you're basically just

25   going to look in the look-up table and see, okay, well,

1   position 25 in the document doesn't correspond to an entry in

2   the look-up table.

3          Oh, well, there's an entry here within which falls

4   offset position 25.  Let me select the external reference

5   material by looking at the -- by identifying the pointer or the

6   link -- linking information, which is essentially a pointer, to

7   the external reference material.

8          So if it's Kanji for Japanese economy at that

9   location, that offset position in the document, it's being

10  linked by a pointer to a database that says, okay, well, the

11  yomi, kanji for Japanese economy, is being linked to the

12  English translation, Japanese economy.

13         So the look-up table is -- is there to select the

14  external reference material that you're going to be -- and

15  using the link to retrieve and then displaying the pop-up

16  window.

17         I think that's what we have to say about that.

18         THE COURT:  All right.  Thank you, Mr. Seth.

19         MR. BLUM:  Your Honor, Sentius hasn't pointed to any

20  algorithm within the specification that describes how this

21  offset value is actually determined.

22         The limitation is a means for converting the display

23  address of the selected discrete portion to an offset value

24  from the beginning position address.

25         Sentius in its brief, in its opening brief, points to

1    the user interface 32, the electronic viewer 43, but these are

2    simply black boxes.  They're not algorithms.  They don't tell

3    you how this offset value is determined.

4              Sentius also points to this excerpt from the '731

5    patent which reads the click position is determined and used to

6    calculate offset value within the text.  In the example shown

7    in figure two, the user clicks at a particular location, e.g.

8    horizontal and vertical coordinates, 100 and 75 respectively,

9    and offset value of 25 is returned.

10             But the problem here is there's no description of how

11   you actually calculate that offset value.  The algorithm is

12   completely absent.  They only tell you the function, the

13   result.

14             Now, at first glance in the description, it talks

15   about horizontal coordinates and vertical coordinate, 100 and

16   75, offset value 25.  So when I first read this the very first

17   time, I thought, well, maybe the algorithm is 100 minus 75

18   equals 25, but that can't be correct because, you know, if you

19   click here at 100, 75, your offset value would be 25.

20             But if you click down here at 150, 125, well, 150

21   minutes 125 is also 25, and they're clearly not the same

22   distance away from the beginning position.

23             If you're on the -- you know, on the diagonal line

24   you clicked on 100, 100, 100 minus 100 is zero.  You're

25   certainly not zero away from the beginning position.

1              In the reply brief and here today, Sentius seems to

2    change its position and now point to the visual editor and also

3    the offset index.  I first want to deal with the offset index.

4              Offset index actually only appears twice in the

5    specification.  I think the first time is in figure one, and

6    the second time is in -- on column five around line 26 of the

7    specification.

8              And there the specification simply states the indexer

9    viewer 29 creates a multimedia resource 30 such as the file 33

10   that was processed as described above to produce a data

11   resource 34 and offset index 35 and a link entity -- and link

12   entities 36 to the data resource for access by the user.  So

13   there's no detail behind what this offset index is.  It's

14   simply a black box.  It's not an algorithm.

15             The other issue is -- I mean, the only thing that

16   would make sense for the offset index to be would be -- would

17   be to -- would be that the look-up table is stored in the

18   offset index, as shown in figure two.

19             But if that's the case, under the claim language you

20   convert -- you determine the offset value, and then you take

21   that offset value, and the next means MPF limitation you

22   compare that offset value to the values that are already stored

23   in the offset index in the look-up table.

24             And then from there you're able to see if there's a

25   match, but that has nothing to do with actually converting the

1    display address to figure out what the offset value is.

2          THE COURT:  Isn't the offset value the location

3    relative to the beginning position?

4          MR. BLUM:  Yes, Your Honor, I believe that is

5    correct, but in its proposal -- and previously counsel

6    discusses that the offset index is actually the structure.

7          In their proposal, Sentius says a processor

8    programmed to perform the step of determining the offset value

9    of the displayed location where the user input was received

10   based upon an offset index, but nowhere in the specification is

11   it described that the offset value is determine based upon an

12   offset index.

13         THE COURT:  I understand that criticism of the

14   proposed construction that was in the briefs, and I guess what

15   I'm really wanting now is more reaction, which I think you've

16   given me, to the proposed structure that they've identified in

17   argument.

18         MR. BLUM:  Well, I think the other proposal that

19   they've argued is the visual editor, but, again, the visual

20   editor is not linked to this means for converting.

21         In their technology tutorial that you see up here on

22   the slide, they explain that the means for converting step is

23   performed by the electronic viewer.  It's not linked to the

24   visual editor.

25         The visual editor is not clearly linked or clearly

1    associated with this step of means for converting, and under

2    the Default Proof case, there has to be that clear link or

3    clear association.

4              As discussed earlier, that's exactly how the

5    specification actually describes figure one.  In figure one,

6    the electronic viewer reads the file, I believe that's 33, but

7    it has -- there are no arrows between the electronic viewer and

8    the visual editor or any of the other boxes those are on the

9    top half of figure one.

10             So the visual editor plays no role in this step of

11   converting display address of the selected discrete portions

12   with offset value.

13             THE COURT:  All right.

14             MR. BLUM:  Thank you, Your Honor.

15             THE COURT:  Thank you, Mr. Blum.

16             MR. SETH:  Could you put it on slide 36?

17             So in our proposed construction for the means for

18   converting, Your Honor, we're saying it's a program --

19   processor programmed to perform the step of determining the

20   offset value of the display location where the user input was

21   received based upon an offset index.

22             And we believe that our citations show and the

23   specification is very clear that for every -- that for all --

24   all the words, there is an offset index that relates them to

25   the quick location as any visual editor does.

1          It's just that we're using this now -- instead of

2     determining an insertion point to now take that offset position

3     and look in the look-up table.

4          I'm going to turn to 17, the means for selecting one

5     of the plurality of external reference materials -- oh, Your

6     Honor, before I do, I just wanted to point the Court also to

7     five, 23 to 28, because I'm not sure I had that in the slide

8     for this section.  That's another reference to the offset index

9     and how it's being used.

10         All right.  Going to element 17 of the means for

11    selecting one of the plurality of external reference materials,

12    corresponding to the identified one of the plurality of

13    discrete pieces.

14         Can we go to slide 40?

15         MR. DAVIS:  Forty.

16         MR. SETH:  Yes, please.

17         All right.  And we're proposing the structure here is

18    a processor programmed to perform the step using the pointer

19    for the matched offset value range to identify a corresponding

20    external reference material.

21         That's a lot of words, but basically what we've done

22    now is we've taken the click location.  We've now consulted the

23    offset index.  We now know where they clicked on in the

24    document.  We've looked in the look-up table to see if there is

25    a corresponding range of offset values within which this falls,

1    and if there is, we're selecting an external reference material

2    by going to the pointer.

3              The system has -- can be used for any -- any end

4    purpose.  Whatever you want to link to, you can as long as you

5    store that linking information in the row, in the look-up table

6    for that offset range, English translation, spelling

7    correction, whatever it is you want to link it.

8              But you've got to put that pointer into that look-up

9    table, and you've got to figure out if the click location

10   matches a range in the look-up table so that you can identify

11   what the pointer is for that particular word that was clicked

12   on by the user so that you can go retrieve the external

13   reference material.

14             This is simply the step of identifying the -- the --

15   if you will, selecting the external reference materials by

16   going and looking in the look-up table and finding the pointer

17   for it, and that's really all this step is.

18             And then there are -- there's all -- there's further

19   on in the claim after you've identified the pointer, you can

20   then use the pointer to go actually retrieve the external

21   reference material so that you can put it up in the pop-up

22   window.

23             So that's all I have on that.

24             THE COURT:  All right.  Thank you, Mr. Seth.

25             All right.  Do you have some brief response on that,

1  Mr. Blum?  Go ahead if you do.  I just want to break before we

2  move on to the next term.

3              MR. BLUM:  So, Your Honor, I think the problem with

4  Sentius' interpretation of the function here is that they're

5  assuming that you do this comparison within the look-up table,

6  and then it doesn't match.  You have the offset value and you

7  can -- you can then retrieve that pointer to that external

8  reference material.

9              But the problem is the specification actually

10  describes that there could be multiple external reference

11  materials.  You see that in figure three of the patent.

12             Here, a user clicks on some of the Japanese texts,

13  and then you have multiple options, including an English

14  reference or additional notes.  You can select one of those and

15  then the external reference material is retrieved and

16  displayed, such as Japanese economy as shown in figure three.

17             And that's actually what the specification describes.

18  The '731 patent, column nine, 13 to 25, to select a word or

19  phrase from the book, the user clicks on a word that is not

20  understood and a pop-up menu immediately appears.

21             Further down in this passage, to view the English

22  reference information, the user selects the English reference

23  from the pop-up menu, and the information appears next to the

24  pop-up menu.

25             This is actually the only time in the specification

1    where it talks about selecting an external -- selecting an

2    external reference material for them to be displayed, and

3    Sentius' proposal simply ignores that.

4              Sentius is essentially attempting to rewrite the

5    claim from selecting to identifying.  It's no longer selecting

6    the corresponding reference material.  Instead you just have to

7    identify it because under their interpretation, there's only

8    one.

9              However, there's absolutely nowhere in the

10   specification that provides any description of how this

11   selection occurs.  There are no algorithms in the

12   specification.  Sentius simply just points to conclusory

13   statements and black boxes in the specification, such as the

14   application program and the link engine.

15             It also points to this excerpt from the '731 patent

16   that states when the offset value falls between a component

17   start and end points, a match is made and an external reference

18   can be resolved; however, there's no description there on how

19   that resolving actually takes place or how the selection

20   process occurs.

21             Sentius, again, they also propose in their briefs

22   structure, which is not linked clearly associated.  Again, here

23   we're talking about the part of the program that's occurring in

24   this red box in figure one.

25             But in the briefs Sentius points to the link engine,

1    which in no way is clearly linked or clearly associated to this

2    step.

3              That's all I have, Your Honor.

4              THE COURT:  Okay.  Thank you.

5              MR. SETH:  Just a brief rebuttal, if we can.

6              THE COURT:  All right.

7              MR. SETH:  Just have one brief rebuttal.  Slide 42,

8    please.

9              I just wanted to clarify one point, and that is that

10   the user does not -- the claim term is talking about selecting

11   the -- the -- the system selecting the external reference

12   material that it's going to be retrieving and displaying.

13             And the interpretation that Defendants give doesn't

14   take into account the fact that they're saying that it's a type

15   of external reference material, not the actual thing that

16   you're displaying.  The user doesn't select the thing that

17   you're displaying.  The system has a link to that.

18             THE COURT:  What they're saying, as I understand it,

19   is that this should be read to be addressing choosing between

20   multiple external reference materials that the system may

21   present, and I understand your reading of it is this is just a

22   system action, not a user action.

23             MR. SETH:  That's correct, Your Honor.  I just wanted

24   to -- that's correct.

25             THE COURT:  All right.  I understand that.

1          We'll take a 15-minute recess now and come back and

2    take up the rest of the terms that the parties want to address.

3          COURT SECURITY OFFICER:  All rise.

4          (Recess taken.)

5          COURT SECURITY OFFICER:  All rise.

6          THE COURT:  Thank you.  Please be seated.

7          What is the next term either side would like to

8    address?

9          MR. BLUM:  Your Honor, with regard to any specific

10   terms, I think there are no other terms that we need to

11   discuss.

12         THE COURT:  Does the Plaintiff object to the proposed

13   constructions, preliminary constructions that the Court has

14   provided to the other terms?

15         MR. SETH:  We have no objection.

16         THE COURT:  All right.  Then I will turn it over to

17   the Defendant.

18         MR. PARKS:  We feel the same way, Your Honor.  We

19   don't have any terms to address, and we don't have any disputes

20   with the other terms in the preliminary construction.

21         THE COURT:  So I can then take it that the parties

22   agree to the preliminary constructions on the other disputed

23   terms?  Is that -- I see agreement from the Plaintiff.

24         MR. PARKS:  Yes, Your Honor.

25         THE COURT:  All right.  Then is there anything else

1    that we need to take up in connection with the claim

2    construction?

3              MR. YORIO:  Your Honor, just kind of a point of law.

4    I just want to make a few comments on Enfish.

5              THE COURT:  That's fine.

6              MR. YORIO:  Your Honor made some observations

7    about -- can we look at slide 14?

8              We discussed Enfish in the reply brief, Plaintiff's

9    reply brief, at pages seven and nine, and the point I wanted

10   to -- and Your Honor referred to certain sections -- phrasing

11   in the holding.

12             The point that I wanted to call the Court's attention

13   that I think is particularly relevant here, it's in the

14   right-hand column, and it states the principal that an

15   algorithm of the type we have here and the type that was at

16   issue in Enfish can rely in part on known techniques, known to

17   persons of ordinary skill in the art.

18             And then the next sentence is, I think, appropriate

19   here.  The sufficiency of the structure, which Your Honor has

20   to determine, is viewed through the lens of a person of

21   ordinary skill without the need to disclose structures

22   well-known in the art.

23             And where -- although I think the specification does

24   layout steps and structure for all of the elements.  Where

25   there are structures well-known in the art and Madisetti goes

1   through them about what is it a visual editor does and what

2   those of ordinary skill know that it does and will do, I don't

3   think that the patent owner has to disclose those structures,

4   particularly through the visual editor of the time and the

5   other references, that are well-known to those in the art.

6            If you look at Madisetti's declaration, that's

7   exactly what he points to, and I think that's appropriate for

8   the terms that are at issue that we've argued here this

9   morning, Your Honor.

10           THE COURT:  And the only thing I would say to that is

11  I don't think Enfish changes the longstanding law that there

12  still must be some structure disclosed and clearly linked to

13  the claimed function.

14           MR. YORIO:  And I understand that, and I think we've

15  gone -- for the four terms that we've discussed, we have

16  identified structure that is linked to the function, and -- and

17  then we can also rely in part, which is what Enfish says, not

18  to disclose -- we don't have to disclose the structures that

19  might complete a particular step, as long as there is

20  sufficient structure to link that specification to the

21  particular function.

22           THE COURT:  And I see that as relating primarily to

23  the issue of whether the disclosed structure is sufficient to

24  accomplish the function.

25           I think that you're right that you have to look at

1  what a person of ordinary skill would know in addition to the

2  use of that disclosed structure, and I will look back at the

3  sections that you've pointed to from the specification in

4  connection with the functions that we're dealing with, and I

5  will get something out as quickly as I can.

6          MR. YORIO:  Understood.  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          All right.  I appreciate your arguments.  They've

9  been helpful, and with that, we are adjourned.

10          COURT SECURITY OFFICER:  All rise.

11

12          (Hearing concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2              I HEREBY CERTIFY that the foregoing is a true and

3     correct transcript from the stenographic notes of the

4     proceedings in the above-entitled matter to the best of my

5     ability.

6

7     _____        Date: 9/12/17
      Tammy L. Goolsby, CSR
8     Deputy Official Court Reporter
      State of Texas No.:  3101
9     Expiration Date:  12/31/18

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,   on 08/18/2017                    60Index: 100..and/or

**1**

**100**  20:21 46:8,15,17,19,24

**112(6)**  4:15,16 8:13,15,19
13:2

**12**  9:20 10:3,8,10 13:2 27:6
28:15 29:10

**125**  46:20,21

**13**  52:18

**13-element**  5:16

**14**  9:20 26:24 27:2 29:8

**15**  16:7 40:16

**150**  46:20

**16**  9:24 23:14 40:3,5

**17**  9:25 40:3 41:13 44:19 50:4,
10

**175**  30:25 41:10

**19**  23:8 27:21 39:4

**2**

**20**  11:6 15:25 16:6 31:23

**200**  30:23

**21**  18:16

**23**  50:7

**25**  10:13 25:22 27:19 38:11
41:11 45:1,4 46:9,16,18,19,21
52:18

**26**  11:19 23:20 36:19 47:6

**27**  27:1

**28**  27:12 29:14 50:7

**29**  25:15 42:15 47:9

**2:16-773**  3:6

**3**

**30**  47:9

**31**  34:25 35:1

**32**  46:1

**33**  23:1 47:9 49:6

**34**  47:11

**35**  47:11

**36**  40:22 47:12 49:16

**37**  17:4 18:15

**38**  42:13 44:10

**39**  25:15 42:15

**4**

**40**  12:19 13:4,5,6 41:2 50:14

**43**  46:1

**44**  13:5,6

**46**  31:1

**49**  30:18 41:2

**5**

**51**  12:15

**57**  12:15

**6**

**6**  30:25

**633**  15:22 17:19 19:16

**65**  31:1

**7**

**731**  10:15,20 12:18 14:13
15:22 16:6,20 17:18,23 19:16,
25 20:2,3 31:23 33:25 34:1
46:4 52:18 53:15

**75**  46:8,16,17,19

**9**

**95**  17:18

**A**

**absent**  46:12

**absolutely**  34:17 53:9

**access**  47:12

**accomplished**  16:22

**achieve**  19:25

**actual**  14:1

**add**  24:22 30:7

**adding**  6:3,4,5

**addition**  31:20

**additional**  12:16 24:13 52:14

**address**  9:15,16,19,20 11:14
12:1 13:19 14:2,3,7,10,22,25
15:16,24 16:18 17:3,6,11
18:10,14,18 22:21 23:24 24:5
25:21 26:8 27:3,4,13 29:9,10
31:4,11,12,13 32:4,22 37:13
39:3 40:1,3 44:7,8 45:23,24
48:1 49:11

**addressed**  10:7 12:13 23:13

**addresses**  12:11 27:14 28:3,
22 29:7,19 33:2,4,22 34:20
35:22 36:3 37:23 38:9,17,23,
24

**addressing**  9:16

**adds**  6:2

**adequate**  4:11,24 13:1 24:14
25:18 26:7 29:5 36:7

**admits**  19:13

**agree**  18:2 20:21 21:15

**agreed**  31:11,12

**ahead**  26:22 52:1

**Alfred**  18:24,25 19:18 20:13,
18 24:19 25:19

**algorithm**  4:16,18 5:15,19,20
7:22,23,25 14:11,24 15:12
18:22,23 19:4,9 20:23 21:1
24:18,19 31:21 32:12 33:12,
14 35:12 45:20 46:11,17
47:14

**algorithmic**  7:18

**algorithms**  14:9 19:9,25
20:14,23,24 33:10 46:2 53:11

**alter**  4:3

**analogy**  29:25

**analyzed**  28:19

**and/or**  16:7,10

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,  on 08/18/2017                              61Index: Anthony..claims

Anthony 13:17

appearances 3:7

appearing 16:19

appears 47:4 52:20,23

application 35:9 53:14

applies 31:9

apply 6:24,25 7:1 31:8

approach 9:10

approached 10:9,17

areas 5:11

argued 19:2 48:19

arguendo 18:22

arguing 8:18

argument 7:10,14 19:20 26:19 32:18 36:1 48:17

argument's 27:10

arguments 4:1,5 5:2

arrows 39:17 49:7

art 8:2,24 15:10 22:18 24:10, 15

aspects 16:15

assigned 38:9

assigning 13:23 14:6 37:23

associates 15:20

association 33:19 34:18 49:3

assuming 18:22 52:5

attempting 53:4

attention 12:17

audio 11:17 19:2,5

audio/video 25:25 31:25

audio/visual 11:1

aware 5:16

**B**

back 9:24 17:4 21:4 25:10 27:19 38:20

backing 5:23

baked 5:19

based 4:4 11:24 12:8 14:18, 20 22:15 23:21 24:1 25:8 27:15 31:10 32:4,6 36:23 42:17 48:10,11 49:21

bases 12:11

basically 7:18 19:20 40:18 41:21 44:24 50:21

basis 5:2

beginning 6:18 9:15,19 10:6, 24,25 11:13,24 12:1,8,23 13:18 14:2,3,9,19,21,23,24 15:7,9,15,24 16:18 17:2,5,11 18:10,14,17 22:8,12,16,21 23:6,13,22,23 24:2,4,5 25:10 26:3,8 27:21 28:1,21 29:9,18 30:18 31:11,13 32:4,7,21 36:3 38:17,22 42:2,17 44:8 45:24 46:22,25 48:3

begins 29:2

behalf 3:9,15 13:17

believes 34:21

bit 17:19 37:6

black 17:14 21:12 33:10 46:2 47:14 53:13

Blackberry 3:5 34:21

blank 4:12

blind 6:3

block 28:16

Blum 3:15 13:15,16,17 20:21 21:7,17 26:11,14,21 31:3 34:23 39:11,25 45:19 48:4,18 49:14,15 52:1,3

book 12:19 14:15 16:7 52:19

bottom 17:25 34:13,14 39:21

box 21:12 47:14 53:24

boxes 17:14 18:6,10 33:10 46:2 49:8 53:13

break 52:1

briefing 4:22 10:17

briefings 21:13

briefs 3:25 18:24 19:20 48:14 53:21,25

broad 4:22

brush 4:22

build 11:10 16:12,16 23:10,15 27:22,24

building 38:21

builds 5:14 20:7 31:24

built 5:19 25:23

**C**

calculate 30:22 36:14 44:15 46:6,11

calculating 32:12

call 12:16

called 13:10

calling 4:17

capable 21:9

car 6:3

case 3:6 15:1,16 18:25 20:14, 15 21:24 33:18 47:19 49:2

cases 15:17

change 4:4 15:4 47:2

changed 14:5

character 13:23,24 14:6 31:18,19

Circuit 15:1 19:6

Circuit's 15:16

circumstances 31:9

citation 13:3

citations 33:19 49:22

cite 19:13

cited 12:3 18:24 30:11 32:5 42:11

cites 10:15

claim 3:4 4:24 5:15,16,17,18, 20 7:9,11,17 14:1,6 15:21 17:18 25:2 26:24 32:19 34:21 40:15 41:13 44:6 47:19 51:19 53:5

claimed 32:16

claims 16:3

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,  on 08/18/2017                    62Index: clear..declaration

**clear** 33:18 34:17 35:18 49:2, 3,23

**click** 16:23 30:22,24 34:11 36:9 37:11,16 38:19 40:21 43:6,13,14,15,21 44:2,3,14,19 46:5,19,20 50:22 51:9

**clicked** 43:20 46:24 50:23 51:11

**clicking** 35:16 38:14 39:12 41:5,8,10 43:1

**clicks** 12:21 26:5 34:5 38:7 39:5 44:12 46:7 52:12,19

**clocks** 30:20 34:4

**code** 19:24

**colleagues** 3:15

**column** 10:22,24 12:4,18 13:4,5 16:6,20 22:10,25 23:3, 4,6,19 25:11,17,18,23 27:20 28:3,4,5 29:11,14 30:16,18 31:1 34:1,19,25 35:2 36:6,10 37:6,7,8 38:20 39:3,4 41:1 42:14,15 47:6 52:18

**columns** 24:7 25:14 28:13 30:11 37:4

**combination** 10:10 25:6

**comment** 21:3

**comments** 10:6

**compare** 47:22

**comparing** 44:24

**comparison** 44:23 52:5

**compilation** 11:20,22 22:2, 14 23:2,20,23 27:14 28:3,5 35:8

**compile** 14:17 22:10

**compiled** 12:24 42:1

**compiling** 42:16

**completely** 46:12

**component** 53:16

**computer** 4:14 9:8

**concept** 31:17

**concern** 25:16

**conclusion** 4:10

**conclusory** 53:12

**confused** 38:13

**conjunction** 25:14

**connection** 17:10 18:13 32:3

**consists** 23:10

**constructed** 11:7 36:20

**construction** 3:4 4:9,24 11:4 16:11 27:2 31:5,15 40:16 48:14 49:17

**constructions** 3:20,21 4:4, 11 5:10 10:4 31:11

**construed** 13:22

**consult** 43:16

**consulted** 50:22

**consulting** 43:8 44:21

**contend** 30:10

**context** 4:16

**contrary** 8:18

**conversion** 19:4,8

**convert** 40:21 44:2,20 47:20

**converted** 12:22

**converting** 9:17 43:21 44:7 45:22 47:25 48:20,22 49:1,11, 18

**coordinate** 41:10 46:15

**coordinates** 30:25 35:17 36:13 43:4 46:8,15

**correct** 18:4 35:10 46:18 48:5

**correction** 51:7

**corrections** 7:3

**correctly** 39:12

**correspond** 45:1

**counsel** 3:7,19 5:2,8 14:12 17:7 35:6 48:5

**counsel's** 35:25

**couple** 9:14 11:21

**Court** 3:2,3,11,13,17,24 4:1 5:11,16 7:4,8,16,21 8:8,11,25 9:5,12,21,23 10:2,14,19 12:6 13:3,7,12,15 18:15 20:13,17, 22 21:3,15,20 22:5,23 23:12

24:3,24 25:12,20 26:10,13,19, 22,25 28:8,11,14,18,24 29:7 30:1,9,13 31:2 33:24 34:23 35:3,5,21 36:9,16 37:11,19,22 38:3,9,13 39:8,10,25 40:4,6 41:21 45:18 48:2,13 49:13,15 50:6 51:24

**cover** 29:1

**covering** 9:13

**covers** 24:21

**create** 20:12 30:5

**created** 11:23 12:7 14:18 22:11,14 23:21 25:7 27:15 29:15 32:6 35:12

**creates** 39:20 47:9

**creating** 42:10

**criticism** 48:13

**current** 4:15

**cursor** 42:23

**cut** 23:22 27:16 29:18 30:5 32:8 36:21,25 42:14

**cuts** 11:23 12:7 14:18,20 22:1,14 23:1,21 24:1 25:8 27:15 29:2,15 32:6 36:21,23 42:16

**cutting** 16:22 17:1 35:8,12

**D**

**data** 19:1,5 47:10,12

**database** 11:2,4,6,9,12 13:20 16:11,12,13,17 17:16 20:7,8, 12 23:11,16,17 24:8 26:2 27:22,23 28:1 31:23 39:1 45:10

**databases** 33:15

**Davis** 3:8,11 50:15

**day** 15:10

**deal** 10:13 47:3

**dealing** 22:7

**decision** 18:24

**declaration** 12:13,15 19:19 21:23 24:7 43:24

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,   on 08/18/2017                    63Index: declarations..evidence

declarations  21:13

Default  15:17 33:17 49:2

Defendants  3:15 13:12,17
    32:15

definition  36:3 39:2

degree  8:1

depends  8:1

describe  25:3,4 30:23 44:16

describes  10:25 16:17 17:17
    30:17 35:13 45:20 49:5 52:10,
    17

describing  7:8 34:2,8,9 40:6
    44:10

description  30:16 41:10
    46:10,14 53:10,18

descriptions  15:2

detail  47:13

details  8:23

detector  6:3

determination  38:1

determine  11:13 14:4 23:23
    28:2 36:2 41:22 43:8,13 47:20
    48:11

determined  12:22 14:10 29:9
    30:22 32:4,11 35:19,23 37:16
    39:13 42:2 44:14,20 45:21
    46:3,5

determines  6:17

determining  9:14,15,19
    13:18 14:2,7,23 15:6,7,15,24
    16:17 17:2,5,10 18:9,14,17
    22:8 23:12 24:4 27:3 31:3
    32:21 33:4,21 34:20 37:12
    42:1 48:8 49:19 50:2

developed  23:9

device  12:20 16:24 30:21
    34:6 36:12 44:13

diagonal  46:23

diagram  17:13 30:18 35:13

difference  28:8

disagreement  9:6

disclose  19:17 20:3,24

disclosed  8:15 9:1 14:8,10
    15:18 19:9 20:14,16,23 21:1,
    5,6,8,11,21 32:16,24 33:12

discloses  17:9 20:3

disclosure  28:6

discrete  27:4 28:7,22 35:21
    36:4 37:14,15,20,24,25 38:24
    45:23 49:11 50:13

discussed  18:20 21:23 32:21
    33:17,20 43:23 49:4

discusses  48:6

display  36:17 37:12 42:7
    44:7 45:22 48:1 49:11,20

displayed  30:20 34:4,10
    41:6,20 44:12 48:9 52:16 53:2

displaying  17:24 45:15

dispute  32:15

disputed  3:23

dissuade  3:22

distance  46:22

distracted  7:5

distributed  3:19

docket  3:6

document  6:7,16,17,18 8:4
    42:3,8,25 43:5,15,22 44:3,4,
    21 45:1,9 50:24

doubting  4:19

─────────────

E

e.g.  46:7

earlier  3:18 12:24 25:11
    33:17 36:22 41:2 49:4

economy  45:8,11,12 52:16

edit  16:15

edited  11:4 16:10

editor  5:24,25 6:6,16 10:10
    11:5 12:10 15:5,11,14,23
    16:1,6,11,14,15,16,17,19,23
    17:4,15 18:18,20 19:14,17,21,
    23,24 20:4,7,11 21:8,13,21,25
    22:6,20,24 23:10 24:11 25:24
    26:16,17 27:8,22 30:2,3
    32:14,15,17,18,22,23 33:8,20

35:7,10 38:21 39:19 42:4,23
43:9,25 47:2 48:19,20,24,25
49:8,10,25

editors  15:10 19:12,15,18
    20:15 21:4,7,11,14 32:24

efficient  5:3

electronic  10:11 12:19 13:20
    16:7 17:8,9 18:1,11,12,19
    27:9 34:8,12,18 39:17,18,21
    41:4 46:1 48:23 49:6,7

element  24:22 36:8 40:16
    41:13 44:6,19,24 50:10

element-by-element  18:6

elements  5:19 9:14 10:7 20:5
    26:18 30:10

EMACS  19:13 20:11

end  27:16 28:6 29:3,16 30:6
    32:8 33:23 34:8 36:24 42:19
    51:3 53:17

ending  6:20 9:16 15:8 17:24
    27:3,13 28:2,21 29:18 31:11,
    18 32:3,11 33:21 34:20 35:22
    36:3 37:13,23 38:17,23,24
    39:2 42:2

ends  12:5

Enfish  5:21 8:2,8 24:16,19
    25:19

engine  11:10 16:13 20:8
    25:24 27:8,24 30:5 31:24 33:9
    39:19 53:14,25

engines  33:16

English  6:10 7:1 45:12 51:6
    52:13,21,22

entire  16:2 28:20

entities  23:17 47:12

entity  47:11

entry  6:21 30:20 34:3 44:12
    45:1,3

equals  46:18

essentially  11:5 31:4,6,15
    37:9 45:6 53:4

event  5:1

evidence  20:9 33:15

**exact** 19:11 20:25

**examples** 20:20

**exception** 31:5,8,9

**excerpt** 10:20,22 14:12 32:5 34:1 46:4 53:15

**excerpts** 26:17 31:23

**excuse** 28:7 40:2

**exhibits** 19:13

**existing** 6:1,5

**expert** 19:22 25:4

**explain** 48:22

**explains** 15:6

**explicitly** 20:22

**extensively** 43:23

**extent** 8:22 13:3

**external** 6:8,9,22,25 7:1 14:15 27:17 28:16 29:20 32:9 34:11 37:1 40:19 41:14,18 43:18,20 45:4,7,14 50:5,11,20 51:1,12,15,20 52:7,10,15 53:1,2,17

---

**F**

**falls** 45:3 50:25 53:16

**feature** 14:14 44:5

**Federal** 15:1,16 19:6

**feel** 3:22

**figure** 10:21 13:1 16:3 17:13, 21,25 18:7,11 20:6 23:6 24:8 25:13,17 26:18 28:4,12 29:1 30:17,18 34:2,9,13 35:9,11,13 36:14,19,24 37:2 38:8,25 39:7,15,16,18,20,21 41:9 44:10,16,20 46:7 47:5,18 48:1 49:5,9 51:9 52:11,16 53:24

**figures** 13:10 21:22 30:12 36:5 37:9

**figuring** 14:24

**file** 10:25 12:10 13:25 16:9,16 17:15 18:18 22:19,20,22 23:2, 7,9,25 24:11,12 26:8 29:21 38:2,8 39:20,23 47:9 49:6

**files** 23:11

**find** 12:1,14 25:5 26:17 30:19 34:3 35:15 39:6 44:11

**finding** 51:16

**fine** 9:23 26:13

**finish** 44:18

**finishes** 8:12

**flaw** 21:5

**flip** 33:25

**flow** 30:17 34:2 35:11,13

**focus** 3:25 5:11

**focused** 15:2 20:17

**focusing** 32:14 42:12

**forgotten** 26:19

**format** 14:14

**Forty** 50:15

**four-step** 24:18

**front** 35:3

**function** 4:8,14,19 7:11,13 9:9 15:15,20,24 17:18 18:8 21:2,9 22:7 24:25 25:1 30:10 31:7,16,22 33:5 46:12 52:4

**functionality** 6:1,2,4,5,6,15

**functions** 19:21 32:16

---

**G**

**general** 20:19

**generate** 19:4

**generating** 19:1

**give** 5:21

**glance** 46:14

**Good** 3:3,8,12,13,14 10:1,2, 13:16

**grammar** 10:11 11:10 15:5, 11,23 16:13 20:8 25:24 27:8, 23 30:4 31:24 33:9,16

**graphic** 11:17

**graphical** 6:1

**group** 5:3

---

**guess** 19:24 21:3 22:23 30:7 48:14

---

**H**

**half** 17:20,25 18:10 34:13,14 39:18,20 49:9

**happening** 34:12

**happy** 5:2,3

**headings** 11:21

**hear** 5:1

**hearing** 3:5 4:5

**hesitate** 7:4

**highlighted** 11:9 18:11 44:10

**highlighting** 29:23

**highlights** 18:6

**history** 15:19

**holding** 24:20

**Honor** 3:8,14 5:9 9:10 10:1,5, 6,9,12,18 11:19,21 12:14 13:6,8,14,16 20:21 21:17,19 22:10 26:11,14 27:10 28:10 29:17 30:8,15,16 31:1,3 33:11 35:1,14,25 39:9,11 40:2,9 41:24 42:14 44:10 45:19 48:4 49:14,18 50:6 52:3

**Honor's** 10:6 12:17 22:13 25:16 27:2

**hope** 4:5

**horizontal** 30:24 35:17 46:8, 15

**host** 19:15

---

**I**

**identical** 27:11

**identified** 10:5 21:14 31:20 48:16 50:12 51:19

**identifies** 6:16 18:18 37:19

**identify** 4:18 18:19 22:20 26:7 50:19 51:10 53:7

**identifying** 8:4 28:15 29:1 40:18 45:5 51:14 53:5

**ignores** 53:3

**image** 11:23 12:7,21 14:17,18
22:11,14 23:20 27:14 29:15
32:6 41:6,7

**images** 11:3 16:10

**immediately** 52:20

**implemented** 19:4,8

**important** 5:6

**include** 8:23 16:10

**included** 11:1,17 37:7

**includes** 11:3 23:16 38:22

**including** 16:2 52:13

**inconsistent** 20:2

**indefinite** 19:3 34:22

**index** 11:10,11,15 23:14,25
25:7,8,23 26:1 27:24,25
29:11,12 30:5 31:25 35:12
36:20 38:21 39:14,15 40:8
41:7,25 42:7,9,10,17 43:3,8
44:2,21 47:3,4,11,13,16,18,23
48:6,10,12 49:21,24 50:8,23

**indexed** 11:24 12:8 14:15,18,
20 22:15 23:21 24:1 27:15
29:15 32:6 36:23 38:4,5 40:7
42:17,22

**indexer** 47:8

**indexing** 42:10

**indicative** 19:1,5

**individual** 15:8 18:18

**information** 11:1 12:2 39:22
45:6 51:5 52:22,23

**initial** 3:24

**input** 22:19 24:11 40:10,18
48:9 49:20

**inquiry** 22:13

**insertion** 43:2,3,10 44:1 50:2

**instance** 16:5,19

**insufficient** 17:6 18:21,23
32:22

**intention** 5:11

**interact** 39:18 41:4

**interaction** 41:2

**interacts** 12:19

**interest** 6:19

**interested** 37:20 38:7

**interface** 6:1 46:1

**International** 3:5

**interpretation** 52:4 53:7

**interpreting** 39:11

**interrupt** 7:5

**invention** 5:15,22 11:5 17:14
19:25 20:12

**invoking** 31:5

**isolated** 35:24

**isolation** 25:16

**issue** 19:11 47:15

———————————

**J**

**Japanese** 6:10,11 34:10
39:12 45:8,11,12 52:12,16

**jump** 9:11

**jurisprudence** 4:15

———————————

**K**

**kanji** 45:8,11

**Katz** 31:5,8,9

**keeping** 10:8

**key** 14:13 26:1

**kind** 6:2

———————————

**L**

**laid** 7:10

**language** 14:1 47:19

**largely** 4:14

**law** 15:1,16

**lays** 7:17

**leave** 5:6 34:24

**leaves** 6:24

**left** 4:12,25 10:21 12:3 39:21

**level** 8:1

**limitation** 8:13,15,19 17:1
18:5 19:1 28:14 29:8 32:19
34:19 36:17 38:14 45:22
47:21

**limitations** 4:16 9:7 17:18,
20,22 28:9 34:15,16

**lines** 16:7,20 25:15,18 31:1

**link** 6:8 11:10 16:13 20:8
25:24 27:8,24 29:19 30:4
31:24 33:9,16,18 34:17 39:19
41:16,17,18 45:6,15 47:11
49:2 51:4,7 53:14,25

**linkable** 23:17

**linked** 4:18 11:4 14:15 15:15,
23 16:11 17:5,20 18:13 24:25
33:20 43:17 45:10,11 48:20,
23,25 53:22

**linking** 16:14 45:6 51:5

**links** 15:20 22:6,24 26:16
27:17 30:10 32:9 37:1 40:14

**list** 24:8 30:8

**loaded** 23:25 25:9 29:23

**locate** 11:18 22:12,16 36:13
38:2,6

**located** 11:12 26:3 28:7
35:16 38:8,18

**locates** 25:24 31:25 38:21

**locating** 29:23

**location** 8:4 11:11,15 12:22
22:21 23:15 24:1,12 25:9,10
26:1,7 27:25 29:2,12 39:1,2
40:21 42:3,24 43:5,15,21
44:2,3 45:9 46:7 48:2,9 49:20,
25 50:22 51:9

**locations** 25:8 40:7

**log** 19:4,7

**logical** 9:18

**long** 5:18 21:5 51:4

**longer** 53:5

**look-up** 6:12,14,20,22 27:17
29:3,4,19 30:7 32:8,25 33:1,3
36:25 40:14 41:15 42:21

43:16,17,19 44:22,25 45:2,13
47:17,23 50:3,24 51:5,8,10,16
52:5

**looked**  5:10 29:20 50:24

**lot**  50:21

---

**M**

**made**  12:14 27:6 53:17

**Madisetti**  12:13,15 19:22
20:10 21:23 22:18 24:6 25:4

**Madisetti's**  43:24

**major**  13:21

**make**  9:18 47:16

**makes**  38:1

**making**  7:15 19:20 35:7

**Man**  18:24

**Mann**  18:25 19:18 20:14,18
24:19 25:19

**manner**  21:2 31:7

**mapping**  42:6 43:4 44:1

**mark**  4:2

**match**  47:25 52:6 53:17

**matched**  50:19

**matches**  51:10

**material**  6:8,10,22,25 7:2
11:14 13:19 16:8 25:25 28:17,
18 32:1 38:18,22 41:19 43:18,
21 45:5,7,14 50:20 51:1,13,21
52:8,15 53:2,6

**materials**  34:11 40:12,13,20
41:14 50:5,11 51:15 52:11

**meaning**  14:5

**means**  4:7 7:10 9:14,15,17
13:18 14:2 16:25 17:2,5,10,
17,23,24 18:9,14,17 19:1 22:7
25:1 27:3 31:3 32:21 33:21
34:19 41:22,25 44:23 45:22
47:21 48:20,22 49:1,17 50:4,
10

**mentioned**  25:11 32:25

**menu**  52:20,23,24

**merges**  37:9

**method**  7:9 14:14

**Michael**  3:14

**microprocessor**  19:3

**Microsoft**  19:14

**minus**  46:17,24

**minute**  17:7

**minutes**  14:13 46:21

**missed**  4:2

**modify**  19:24

**module**  7:18 10:11 17:8,10
18:1,11,12,19 20:5 27:9 34:8,
13,18 41:3

**modules**  20:5

**moment**  18:23

**morning**  3:3,8,12,13,14,19
10:1,2 13:16

**mouse**  16:24 22:3 30:21 34:6
37:18 44:13

**Moussavi**  3:16

**move**  15:25 52:2

**moves**  36:11

**MPF**  18:25 34:16,19 47:21

**multi-step**  24:18

**multimedia**  16:8 47:9

**multiple**  19:8 20:24 24:20
52:10,13

---

**N**

**necessarily**  8:7

**normal**  43:10

**notably**  32:15

**note**  10:23

**noted**  11:22

**notes**  52:14

**notice**  4:8

**number**  15:17 17:14 28:15

**numbering**  17:19

---

**O**

**occurred**  36:18

**occurring**  53:23

**occurs**  53:11,20

**off-the-shelf**  19:23

**offered**  4:10

**OFFICER**  3:2

**offset**  11:24 12:8,23 14:19
22:15 23:21 24:2 27:16 30:23,
25 31:13,17,18 32:7,12 33:2,4
35:16 36:2,14,24 37:10 39:6,
13,14,15 40:7,21 41:7,11,15,
25 42:7,9,10 43:3,4,8 44:2,7,
15,21 45:4,9,21,23 46:3,6,9,
11,16,19 47:3,4,11,13,16,18,
20,21,22,23 48:1,2,6,8,10,11,
12 49:12,20,21,24 50:2,8,19,
23,25 51:6 52:6 53:16

**offsets**  25:8

**open**  6:24 13:24 22:20

**opening**  32:17,19 45:25

**opposed**  20:20

**opposing**  14:12

**options**  52:13

**order**  5:4 22:19 24:10 43:2

**ordinary**  8:16,24 24:10,15

**original**  14:15

**outline**  9:20

**owner**  19:2

---

**P**

**Pad**  19:15

**painted**  4:22

**paragraph**  23:6 33:24

**paragraphs**  12:15

**Parks**  3:14,17

**parser**  10:11 11:10 15:5,23
16:13 20:8 25:24 27:8,24 30:4
31:24 33:9

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,   on 08/18/2017                           67Index: parsers..rare

**parsers** 15:11 33:16

**parses** 6:16

**part** 11:9 17:8 22:5 24:15,22 25:1 28:23 30:9 33:14 35:2,8, 12 36:21 37:8 41:21 53:23

**parties** 3:24 5:4 10:14,17 31:12

**parts** 29:23

**passage** 8:8 36:10 52:21

**passages** 30:11

**patent** 5:14,24 6:9,24 10:20 12:18 14:13 15:22 16:2,6,20 17:18,19,23 19:2,16 20:1,2,3 29:22,24 31:23 33:25 34:1 35:3 36:21 46:5 52:11,18 53:15

**patents** 31:22

**percent** 20:21

**perform** 9:9 13:23 21:2 31:6, 16 33:3,5 34:15 48:8 49:19 50:18

**performed** 15:10 17:25 48:23

**performing** 4:14 15:12 21:9 31:21 32:16

**performs** 19:21 34:15

**permits** 24:16

**person** 8:16 24:10

**phrase** 52:19

**piece** 28:21,22 36:4 38:1

**pieces** 27:5 28:7 35:21 37:14, 15,20,24 38:7,24 50:13

**place** 41:3 43:1,13,14 44:3,4 53:19

**places** 42:11

**Plaintiff** 3:9 4:11,13,17,23 5:8 14:5 26:23

**Plaintiff's** 13:9,21 17:7

**plays** 49:10

**plurality** 27:4 50:5,11,12

**point** 9:16,20 12:14 15:7,8,9 16:23 21:19 22:5 27:3,4,6,13 28:2 29:18 31:4,11,12,14 32:3

33:21 34:20 35:6,22 36:3 37:13,23 38:17 39:2 40:11 43:2,3,10 44:1 47:2 50:2,6

**pointed** 33:7,8 40:6 41:18 45:19

**pointer** 6:22 12:22 22:3 45:5, 6,10 50:18 51:2,8,11,16,19,20 52:7

**pointing** 12:20 16:23 30:21 34:6 36:12 43:1 44:13

**points** 12:5 15:5 21:22 27:16 28:6 29:3,16 30:6 31:22 32:8, 11 36:24 40:9 42:19 45:25 46:4 53:12,15,17,25

**pop-up** 41:20 45:15 51:21 52:20,23,24

**portion** 10:23 11:8 23:3 28:1 45:23

**portions** 10:13 40:24 49:11

**position** 3:22 6:17 9:15 11:14,24 12:1,8,9,11,12,23 13:10,19,23 14:2,3,6,10,19,25 15:7,8,9,16,24 16:18 17:3,6, 11 18:10,17 22:8,15,21 23:13, 21,23 24:1,4,5 26:8 27:15 28:21 29:9 30:22 31:13,19 32:4,7,22 36:9,10,24 37:11 38:17,23,24 42:17 43:5,9,15, 22 44:8,14,19 45:1,4,9,24 46:5,22,25 47:2 48:3 50:2

**positions** 6:20 31:18

**practice** 5:22 37:5

**pre-existing** 6:15

**preliminary** 3:20,21 4:3,9 5:10 10:4 27:2 40:16

**prepare** 23:15

**present** 26:23

**presentation** 33:24

**presented** 13:9

**pretty** 39:16

**previous** 15:3 27:20

**previously** 42:11 48:5

**problem** 13:21 15:11,14 19:19 20:17 21:10 32:10 35:5 46:10 52:3,9

**problematic** 20:16

**procedure** 15:12 18:22 31:21 32:23 40:17

**process** 5:20 12:24 14:17 16:22 22:11 23:9,20 24:9 27:14 33:3 35:11 36:22 37:18 39:20 41:17 53:20

**processed** 47:10

**processor** 13:22 21:1 31:6, 16 48:7 49:19 50:18

**produce** 47:10

**program** 5:25 6:2 31:6 49:18 53:14,23

**programmed** 7:19 9:8 13:22 21:2 31:16 48:8 49:19 50:18

**Proof** 15:17 33:18 49:2

**proposal** 13:21 48:5,7,18 53:3

**propose** 53:21

**proposed** 4:11,13 9:6,22 48:14,16 49:17

**proposing** 28:9 30:2 50:17

**prosecution** 15:19

**provide** 13:1 14:24 24:17 28:5 30:25

**provided** 4:9 16:8

**pull** 27:1

**purpose** 3:21,23 51:4

**purposes** 10:15

**put** 14:12 42:23 43:10,25 49:16 51:8,21

---

**Q**

**question** 7:6,19

**questions** 13:8

**quick** 26:11 49:25

---

**R**

**range** 50:19,25 51:6,10

**rare** 31:9

reaction 48:15

read 26:15 34:19 37:3,4 39:22 46:16

reader 35:14

reads 46:5 49:6

reasonable 29:25

reasons 19:7 32:20

Rebuttal 21:19

receive 40:10

received 4:5 48:9 49:21

recite 11:9

recited 15:21

recognizes 12:9

record 3:4,7,18,25 6:20,21 13:17 20:9 33:15

recorded 27:17 29:3,19 30:6 32:8 36:25 40:13 41:16,17 42:21 43:17

red 53:24

refer 23:12

reference 6:8,10,22,25 7:2 11:11,16 12:16 14:16 18:15 22:19 23:7,16 25:23,25 26:2, 3,6 27:7,20,25 28:4,5 29:12, 20 30:19 32:1 34:3,11 35:2 37:1,8 38:22 39:1,3 40:12,13, 19 41:14,19 43:18,20 44:6,11 45:4,7,14 50:5,8,11,20 51:1, 13,15,21 52:8,10,14,15,22 53:2,6,17

referenced 25:7 28:7 29:16

references 11:16,17 12:4,25 22:4 23:3,18 25:11 27:10,18 28:12,25 32:9 36:6 37:1

referred 20:19 28:14 33:24 36:10 41:3 42:9,10 43:8 44:9

referring 9:2 21:4 24:7 29:8

reflect 5:14

reflection 4:9

regard 44:6

reiterate 26:14

rejected 19:6

related 38:14,16

relates 40:17 49:24

relational 23:16

relative 6:18 12:11 15:9 48:3

relied 8:9

relying 8:11

reply 15:4 32:13,14 47:1

required 14:25 19:18

requires 4:15

reserve 4:3

resolved 53:18

resolving 53:19

resource 16:8 47:9,11,12

respect 20:13 32:19 37:9

respond 13:13

response 26:12 51:25

responsible 18:7

rest 35:14

result 15:13 46:13

retrieve 45:15 51:12,20 52:7

retrieved 41:19 52:15

retrieving 7:2

returned 46:9

returning 41:11

revealing 7:12

reveals 9:8

review 3:25

reviewing 40:24

rewrite 53:4

rhythmic 19:4,8

rise 3:2

Robert 3:9

role 49:10

row 51:5

──────────
S
──────────

Sandeep 3:9

Sartouk 3:16

satisfy 8:15

schematic 17:13

screen 10:21 12:17 30:20 34:4 37:12 38:14 42:6 43:2 44:4,12

scrolled 42:7

search 16:1

seated 3:3

section 11:19,22 50:8

sections 24:9

SECURITY 3:2

segment 30:14

select 22:3 38:19 41:13 45:4, 13 52:14,18

selected 28:22 30:20 34:3 40:11,12 44:12 45:23 49:11

selecting 9:17 40:19 50:4,11 51:1,15 53:1,5

selection 53:11,19

selects 41:18 52:22

sense 9:18 38:16 47:16

sentence 8:12 10:25 22:12

Sentius 3:5 14:8 15:2 18:1,6, 18 19:12 31:4,15,20,22 32:5, 13,14,25 33:7,19 34:14,19 45:19,25 46:4 47:1 48:7 53:4, 12,21,25

Sentius' 18:16 19:19 33:23 52:4 53:3

sequential 37:5

set 3:19 13:24 19:17 20:19,23 25:10 32:23 34:22

Seth 3:9 5:9 7:4,7,14,17,23 8:10,21 9:4,10,13,22,24 10:17 40:2,5 41:24 45:18 49:16 50:16 51:24

sets 23:2 25:5 35:10

shaded 23:7

short 26:12

show 9:7 42:5 49:22

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,  on 08/18/2017                                    69Index: shown..ten

**shown**  15:3 16:6 34:9 36:16 39:14 44:16 46:6 47:18 52:16

**side**  3:22 35:1

**sides**  3:19

**signal**  19:2,5

**similar**  14:12 27:6,10,11,22 29:24 32:20

**simple**  16:22

**simply**  31:13 33:2,10 39:22 46:2 47:8,14 51:14 53:3,12

**single**  20:22

**skill**  8:1,16,20,24 24:10,15

**skilled**  22:18

**slide**  5:14 10:13 11:19 15:3, 25 16:6 17:4,12,13 18:4,15 22:9,25 23:20 25:22 27:1,12, 19 29:12,14 30:17 33:25 34:24,25 36:19 38:11 40:22 42:12 44:10 48:22 49:16 50:7, 14

**slides**  29:24

**software**  4:15 5:23,24 7:18

**sort**  37:6 40:25

**sound**  11:3 16:10

**sounds**  7:9

**source**  11:14 12:2 13:19 16:8,13 25:25 32:1 38:18,22

**sources**  20:8 27:23 31:24

**spec**  8:7 12:25

**specific**  10:12 19:9,17 20:20 21:14 32:23

**specifically**  24:16 44:6

**specification**  4:19 7:20,25 8:22,25 9:3,8 10:13,15,24 11:8,20 14:9 15:3,18,19 16:1, 3,5,20,21 17:9,17 19:10 20:14,19 21:8,12,16,22,24 22:6,16 24:14,25 25:5,14 26:15 27:9 28:13,25 29:5 30:9 31:22 32:24 33:13 35:18 37:4 40:6,24 42:11 45:20 47:5,7,8 48:10 49:5,23 52:9,17,25 53:10,12,13

**specifications**  13:11

**specificity**  7:25 9:11

**spelling**  7:3 51:6

**spirit**  4:6

**spot**  6:3

**Stafford**  3:8

**stage**  11:21 23:1

**stages**  22:2 23:23

**start**  5:5 9:19 10:3 12:5 27:16 28:6 29:16 30:6 32:7 36:24 37:16 53:17

**starting**  6:20 9:16,20 15:8 17:14,23 22:21 24:12 27:3,13 28:2 29:3 31:4,14,18 32:3,11 33:21 34:20 35:22 37:13,23 38:23 39:2 42:19

**starts**  8:11 11:5 13:4 37:18 38:4 40:16

**state**  3:7,18

**stated**  32:15

**statements**  53:13

**states**  16:21 47:8 53:16

**step**  5:23 7:19,20,22,24 13:23 18:14 22:11 24:13 26:16,21 28:3 33:21 36:1 44:17 48:8,22 49:1,10,19 50:18 51:14,17

**step-by-step**  5:20 8:5 15:12 18:21 22:2 31:21 32:23

**steps**  5:21 7:18 20:9 21:24 24:20 25:6 26:5 35:15

**stick**  31:17

**store**  51:5

**stored**  13:19 33:2 39:14,15, 23 47:17,22

**storing**  31:10

**stream**  6:13

**structural**  30:10

**structure**  4:8,10,13 6:13 7:12,16 8:13,15 9:1,2,7 10:5, 9,10 12:11 13:1,10 14:8 15:19,20 17:8 18:21 24:17,21, 24 25:19 27:7 28:8 29:6 30:1 31:20 33:1,6 34:22 36:7 48:6, 16 50:17 53:22

**structured**  15:18

**struggling**  25:2

**sufficient**  8:19 24:17 28:5 33:13

**suggested**  7:3

**summarizes**  37:6

**supplement**  27:7

**support**  7:20 8:22,23,25 9:3 24:14 26:7 36:7

**sync**  10:8

**system**  5:15 7:9 12:9 14:14 16:23 22:3,20 24:11 35:19 36:13 37:5,17 38:3 40:10,13, 20 41:5,13 43:2 51:3

———————————

**T**

**table**  6:12,14,21,22 27:17 29:3,4,19 30:7 32:8,25 33:1,3 36:25 40:14 41:15 42:21 43:16,17,19 44:22,25 45:2,13 47:17,23 50:3,24 51:5,9,10,16 52:5

**takes**  5:24 6:1 23:1 35:14 36:13 53:19

**taking**  3:22 41:3 43:13

**talk**  12:4 24:4 37:4

**talked**  41:1 42:18

**talking**  16:25 17:2 24:22 29:7,10,13 34:7 53:23

**talks**  11:22 22:13 23:7 30:19 34:1,2 35:15 36:1,20,23 38:20 46:14 53:1

**tangent**  23:17

**teaching**  16:8

**tech**  6:13

**technique**  8:5,6 24:15 43:12

**techniques**  8:3 15:6 24:23

**technology**  18:2,3,5,16 34:14 48:21

**telling**  14:20

**tells**  22:16 23:15,25 35:19

**ten**  16:9 44:24

SENTIUS INTERNATIONAL, LLC vs BLACKBERRY CORPORATION
MARKMAN HEARING,   on 08/18/2017

70Index: term..Yorio

**term**  10:3,4,8,10,23  12:2  13:2,
9  19:2  21:18  26:23,24  27:2,6,
20,23  35:1  40:1  52:2

**term-by-term**  5:2

**terms**  3:23  4:8  9:24  25:7
31:12

**testify**  20:10

**text**  10:25  11:1,4,12,16,18,23,
25  12:9,10,21,23  13:24  14:15,
17,19,21,23  15:7  16:9,11,15
17:15  18:18  22:11,12,17,19,
21  23:7,9,11,17,22,25  24:2,12
25:9,14  26:4,8  27:16  28:1,20,
23  29:1,13,15  30:6,21,23  32:7
34:5,10  36:25  38:1,7  39:13
41:6  42:18  44:13,15  46:6

**texts**  32:8  52:12

**textual**  11:14  12:2  13:19
25:25  28:17,18  31:25  38:18

**theories**  19:19

**theory**  15:4

**thing**  20:25  33:23  38:5  47:15

**things**  31:10

**thinks**  18:7

**Thirty-seven**  40:23

**thought**  46:17

**tied**  40:25

**time**  4:1  36:16  46:17  47:5,6
52:25

**times**  16:2

**today**  17:1  32:13,25  33:7,20
47:1

**Tony**  3:15

**top**  17:14,20  18:10  39:18,19
49:9

**trade**  25:1

**translation**  7:1  45:12  51:6

**translations**  6:10,11

**turn**  5:7  27:23  31:25  50:4

**turning**  27:12

**tutorial**  18:3,5,16  34:14  48:21

**two-step**  24:19

**type**  11:1  24:18

## U

**uncommonly**  4:4

**understand**  8:14  9:1  24:3,24
25:3,16  35:25  48:13

**understood**  10:5  52:20

**user**  12:19,21  22:3  26:5  30:20
34:4,5,10  36:11,12,17  37:17,
19,20  38:1,4,6,14,18  39:5,12
40:10,11,17  41:4,8  44:12
46:1,7  47:12  48:9  49:20  51:12
52:12,19,22

## V

**values**  33:2,4  39:13  41:7
47:22  50:25

**versus**  3:5

**vertical**  30:24  35:17  46:8,15

**video**  11:3  30:2

**videos**  16:10

**view**  36:7  52:21

**viewed**  30:21  34:5  44:13

**viewer**  17:8,10  18:1,11,12,19
34:8,12,18  39:17,18,22  41:3,4
46:1  47:9  48:23  49:6,7

**viewing**  10:11  27:9

**VIM**  19:14  20:11

**virtue**  35:16  42:1

**visual**  5:24,25  6:6,15  10:10
11:5  12:10  15:5,10,11,14,23
16:1,5,11,14,15,16,17,19,22
17:4,15  18:20  19:12,13,14,15,
17,21,23,24  20:4,7,11,15
21:4,7,8,11,12,14,21,25  22:6,
20,24  23:10  24:11  25:24
26:16,17  27:8,22  30:3  32:14,
15,17,18,22,23,24  33:8,20
35:7,10  38:21  39:19  42:4,23
43:9,25  47:2  48:19,24,25
49:8,10,25

## W

**wanted**  26:14  50:6

**wanting**  48:15

**well-known**  15:9  19:25
33:14,16

**whatsoever**  21:2  31:7

**window**  41:20  45:16  51:22

**word**  5:25  16:1,22  19:15  22:1
23:1,22  26:1,17  30:19  34:3
35:15  36:21  38:19  39:6  40:12,
18,19  42:3,25  43:14,20  44:11
51:11  52:18,19

**wordified**  11:6  16:12,16
17:16  20:7,8,12  23:11  24:8
27:22  33:15

**words**  6:7,11,16,19  8:4  15:8
24:9  40:7  41:8  42:16,19,20,22
43:16  49:24  50:21

**works**  22:3  35:19

**worry**  26:20

## Y

**yomi**  45:11

**Yorio**  3:10,12  9:13  10:1,2,3,
20  12:7  13:5,8,13,14  21:19,21
22:9,25  23:14  24:6  25:6,13,22
26:15,24  27:1  28:10,12,17,20,
25  29:11  30:4,12,14  34:24
35:4,6,24  36:12,19  37:15,21,
25  38:5,11,16  39:9,10  40:5